125 N.M. 643

1998-NMSC-027

964 P.2d 807

**Connie GUTIERREZ, Worker–Petitioner,**

**v.**

**CITY OF ALBUQUERQUE, self-insured, Employer–Respondent.**

**No. 23313.**

Supreme Court of New Mexico.

Aug. 25, 1998.

Weeth Law Office, George W. Weeth, Albuquerque, for Worker-Petitioner.

Padillla, Riley & Shane, P.A., Timothy S. Hale, Deborah S. Dungan, Albuquerque, for Employer-Respondent.

William H. Carpenter, Michael B. Browde, Helena Gorochow, Albuquerque, for Amicus Curiae New Mexico Trial Lawyers Association.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Max J. Madrid, Christopher P. Muirhead, Albuquerque, for Amicus Curiae New Mexico Defense Lawyers Association.

## OPINION

McKINNON, Justice.

{1} This case requires us to revisit a provision of the Workers' Compensation Act, NMSA 1978, § 52–5–17 (1987), and our decision in *Montoya v. AKAL Security*, 114 N.M. 354, 838 P.2d 971 (1992). In *Montoya*, we held that Section 52–5–17 allows an injured worker to pursue a third-party tort claim and also receive compensation benefits for the same injury, subject to an employer's right of reimbursement depending on the relative success of the tort claim. The question presented here is whether an employer is entitled to *full* reimbursement from a worker's fair, but partial, third-party tort recovery, even though the worker will probably receive nothing after the reimbursement. The Court of Appeals held that the employer was entitled to full reimbursement. *See Gutierrez v. City of Albuquerque*, 121 N.M. 172, 909 P.2d 732 (Ct.App.), *cert. granted*, 120 N.M. 828, 907 P.2d 1009 (1995). We reverse the Court of Appeals, and hold that the employer is entitled to be reimbursed only from that portion of the settlement proceeds which duplicates compensation benefits paid under the Act. We accordingly remand the case to the workers' compensation judge for an allocation of the proceeds consistent with this opinion.

## I. Facts and Proceedings

{2} Connie Gutierrez (Worker) was employed as a plumbing inspector for the City of Albuquerque (Employer) until she was injured on July 9, 1987. On that day she was inspecting a construction site and fell over materials left at the site by Thermal Control, Inc. She received workers' compensation disability and medical benefits totaling $52,-163.37 from Employer from July 1987 through September 1992. In April 1990, Worker filed a workers' compensation claim contesting the amount of her entitlement, and thereafter filed a third-party negligence suit against Thermal Control. In January 1992, Worker and Thermal Control settled the tort action for $140,000, which Worker and Employer agreed, and the workers' compensation judge expressly found, was a reasonable compromise of the third party claim. Employer then asserted that Section 52–5–17 entitled it to reimbursement from Worker's settlement proceeds for the full amount of compensation benefits it had paid, minus its proportionate share of the legal fees and costs incurred in her third party suit. *See Transport Indemnity Co. v. Garcia*, 89 N.M. 342, 344–45, 552 P.2d 473, 475–76 (Ct.App. 1976) (expenses of third-party action to be prorated between the employer and the worker).

{3} The workers' compensation judge heard evidence on the extent of Worker's tort damages proximately caused by Thermal Control, and determined that she had sustained $367,609.13 in actual tort damages, the elements being $24,969.13 in medical expenses (entirely paid by workers' compensation), $220,604.00 in total lost wages (only a portion paid by workers' compensation), and $122,000.00 in pain and suffering (none paid by workers' compensation). *Gutierrez*, 121 N.M. at 174, 909 P.2d at 734. The judge concluded that Worker's $140,000 tort settlement covered 38% of these damages. Apparently reasoning that Employer should equitably share the loss sustained by Worker under the principles enunciated in *Montoya*, the

judge ruled that Employer was entitled to be reimbursed only to the same extent: 38% of the $52,163.37 it paid on behalf of Worker, or $19,822.08.[1] Employer appealed to the Court of Appeals. *See* NMSA 1978, § 52–5–8 (1986) (providing for judicial review of final order of workers' compensation judge in court of appeals).

{4} In a divided decision, the Court of Appeals reversed, holding that Employer was entitled to full reimbursement of the benefits it had paid to Worker. *See* 121 N.M. at 173, 909 P.2d at 733. The majority acknowledged that under its holding Worker was likely to receive nothing, 121 N.M. at 175, 909 P.2d at 735, but concluded that the "plain meaning" of Section 52–5–17 compelled a "pro tanto reimbursement" equal to the *amount* paid by the employer. 121 N.M. at 177–78, 909 P.2d at 737–38. Judge Bosson, in dissent, would have affirmed the judge's order as a reasonable method, among several, of applying Section 52–5–17 under the equitable principles of *Montoya*. *See Gutierrez*, 121 N.M. at 185, 909 P.2d at 745. We granted certiorari to determine whether and how the proceeds of a worker's third-party action are to be allocated for reimbursement under Section 52–5–17.

## II. Discussion

{5} Section 52–5–17 of the Worker's Compensation Act is entitled "Subrogation" and provides in relevant part:

> The right of any worker ... shall not be affected by the Workers' Compensation Act ... but the claimant shall not be allowed to receive payment or recover damages for those injuries ... and also claim compensation from the employer. *In such case, the receipt of compensation from the employer shall operate as an assignment to the employer ... to the extent of payment by the employer* to or on behalf of the worker or employee for compensation

or any other benefits to *which the worker ... was entitled under the Workers' Compensation Act. ...*

NMSA 1978, § 52–5–17 (1989, before 1990 amendments) (emphasis added).[2] In *Montoya*, we interpreted this provision to allow an injured worker who receives compensation to pursue a tort action against a non-employer third party who caused the injuries. 114 N.M. at 357, 838 P.2d at 974. We noted that if the worker's tort suit is successful, the statute prevents the worker from receiving a windfall by granting the employer an interest in the tort recovery to reimburse it for *compensation* paid to the worker. 114 N.M. at 357, 838 P.2d at 974. If the worker receives a full recovery in tort, the statute "give[s] the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and [gives] the employee the excess." *See* 6 Arthur Larson & Lex Larson, *Larson's Workers' Compensation Law* § 17.20, at 14–5 to 14–7 (1997) (footnote omitted) [hereinafter *Larson's* ]. As *Larson's* explains:

> This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and the employee would be a windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.

*Larson's* § 71.20, at 14–5 to 14–13.

{6} In this case, however, "there is not enough to go around." *Gutierrez*, 121 N.M. at 175, 909 P.2d at 735. As the Court of Appeals acknowledged,

> Of $140,000 recovered in the tort settlement, Worker paid $47,530.70 for attorney fees and related costs. Worker owes an-

---

1. As Employer conceded at oral argument, the actual figure should reflect a deduction of its proportionate share of the legal expenses of the third-party claim. *See also Transport Indemnity Co. v. Garcia*, 89 N.M. 342, 344–45, 552 P.2d 473, 475–76 (Ct.App.1976) (expenses of third-party action to be prorated between employer and the worker).

2. The statute was amended and reorganized effective January 1, 1991, but the operative language remains unchanged. *See* NMSA 1978, § 52–5–17 (effective January 1, 1991).

other $15,221.78 for doctor's bills not covered by workers' compensation. From the balance (approximately $77,000), the City [Employer] seeks reimbursement for all the benefits it has paid out as well as a credit for any benefits it may owe in the future. That reimbursement may well equal or exceed all that is left of the tort settlement. If so, Worker will retain nothing at all or a marginal sum at best.

121 N.M. at 175, 909 P.2d at 735. Therefore, we must determine what the legislature intended to be the *extent* of an employer's interest in a worker's fair, but partial, tort recovery to reimburse it for compensation paid to the worker.

{7} The Court of Appeals majority reasoned that an employer's interest is the amount the employer paid, regardless of the elements or the amount of the tort recovery. 121 N.M. at 178, 909 P.2d 738. Employer argues that it is entitled to the full amount it paid out to Worker in compensation because otherwise Worker would receive a windfall contrary to Section 52–5–17. Worker counters that the legislature intended Section 52–5–17 to give the employer a right of subrogation, an equitable right which allows the workers' compensation judge to equitably allocate the proceeds between a worker and an employer as the judge did in this case. While we agree that the judge may equitably allocate the proceeds, the method used must be consistent with legislative intent.

{8} Here, the methods of allocation urged by the judge, the parties, and amici were inconsistent to some degree with legislative intent. Specifically, there was a failure to analyze the "extent of payment by the employer ... for compensation" called for in Section 52–5–17 in determining the amount of Employer's reimbursement. We hold that the employer's extent of reimbursement for compensation paid is determined by identifying the nature and purpose of the payments made by the employer, and comparing the elements of the tort recovery with those which are duplicative of the employer's compensation payments. The total of the duplicative payments is the amount which must be reimbursed.

## A. Background of Section 52–5–17

{9} Section 52–5–17 sits at the intersection of workers' compensation law and tort law. The legislature's broader objective under 52–5–17 was "to achieve an equitable distribution of the risk of loss" and an "equitable allocation of responsibility." *Montoya*, 114 N.M. at 357, 838 P.2d at 974. The legislature intended Section 52–5–17 to facilitate, not chill, actions in tort against third parties. *See generally Larson's* § 71.00, at 14–1 ("The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall on the wrongdoer."); *Montoya*, 114 N.M. at 357, 838 P.2d at 974. The tort remedy only assists an equitable allocation of responsibility when injured parties have an incentive to and actually pursue negligent tortfeasors. *See generally Trujillo v. City of Albuquerque*, 110 N.M. 621, 624, 798 P.2d 571, 574 (1990) (discussing important social functions served by tort system). Likewise, the workers' compensation system, as a form of social insurance, *see generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 80, at 568, works best and most efficiently when it is not required to bear the expense of injuries caused by third-party tortfeasors. *Larson's* § 71.10 at 14–1; *Kandelin v. Lee Moor Contracting Co.*, 37 N.M. 479, 486, 24 P.2d 731, 735 (1933) ("We find in the [Act] nothing which indicates an intention to lessen the common-law liability of a third person whose negligence caused the injury." (quoting *McArthur v. Dutee W. Flint Oil Co. Inc.*, 50 R.I. 226, 146 A. 484, 486 (1929))). Therefore, a worker's successful pursuit of negligent third parties benefits *both* the worker and her employer by helping to ensure that the workers' compensation system does not bear the loss. When successful, a third-party suit shifts the cost to the wrongdoer and not ultimately to the consumers who may have to pay more for the goods or services sold by the employer because of increased compensation expenses.

## B. Employer's Interest in Tort Recovery

{10} The legislature intended an employer's interest in the tort recovery, whatever that interest is called, to be a function of the

prohibition in Section 52–5–17 against a worker keeping duplicative recoveries from both systems. Section 52–5–17 provides that where a worker recovers both tort damages and compensation benefits, "the receipt of compensation from the employer shall operate as an assignment to the employer ... to the extent of payment by the employer," because the worker should not be allowed to "recover damages for those injuries ... and also claim compensation." Accordingly we recognized in *Montoya* that the employer's reimbursement is bottomed on the principle that a worker must not receive a windfall. 114 N.M. at 357, 838 P.2d at 974. A windfall occurs only to the extent that the tort recovery duplicates the elements of damage covered by compensation benefits. "The underlying concern with third[-]party actions is that the claimant will receive a 'double recovery'[-t]hat is, double compensation *for the same injury.*" *Transport Indemnity,* 89 N.M. at 345, 552 P.2d at 476 (emphasis added). "It is recognized that a work[er]'s compensation award is not comparable to the normal tort recovery," *id.,* and it follows that it is not *necessarily* a windfall when a worker receives both a tort recovery and compensation benefits. In order to determine whether and to what extent a windfall exists, a court must analyze the elements of each recovery.

{11} A tort recovery is the product of a system designed to make parties at fault pay for the injuries they cause. Justice Ransom described the public policies behind tort recovery in *Trujillo:*

> Our fault system of recovery ... today serves the important social functions of [1] redistributing the economic burden of loss from the injured individuals on whom it originally fell, [2] deterring conduct that society regards as unreasonable or immoral, and [3] providing a vehicle by which injured victims may obtain some degree of compensation and satisfaction for wrongs committed against them and [4] by which society may give voice and form to its condemnation of the wrongdoer.

110 N.M. at 624, 798 P.2d at 574 (footnote omitted). The benchmark for a tort recovery is to put the victim in the position he or she would have occupied but for the tortfeasor's negligent conduct. Under our comparative negligence system, each negligent party is charged an amount representing its percentage of fault. *See* NMSA 1978 § 41–3A–1(B) (1987).[3] An injured worker's tort remedy is theoretically designed to compensate for lost wages, lost earning capacity, medical expenses, pain and suffering, loss of enjoyment of life, and other expenses or losses proximately caused by the wrongdoer. *See* UJI 13–1802 to 13–1810A NMRA 1998 (jury instructions with section entitled "PERSONAL INJURY DAMAGES; ELEMENTS").

{12} Workers' compensation benefits have vastly different objectives: they are not given to make the worker whole. The theory is that industry should bear the burden of injuries sustained by its workers. *See Prosser* § 80, at 573 ("The theory underlying the workers compensation acts never has been stated better than in the old campaign slogan, 'the cost of the product should bear the blood of the workman'." (footnote omitted)). Workers are to receive benefits expediently and without regard to fault, but in return the benefits provide only certain medical expenses and periodic subsistence payments, representing some portion of worker's former wages, for a prescribed period of time. *See Transport Indemnity,* 89 N.M. at 345, 552 P.2d at 476.

{13} The remedies provided to an injured worker by each system are certainly not interchangeable, and at best overlap *only to some extent.* When a worker receives a fair but partial tort recovery, it is quite possible that the worker's tort recovery will not duplicate the extent of compensation benefits paid by the employer. For example, that part of a tort recovery calculated to cover pain and suffering, loss of enjoyment of life, or loss of earning capacity would not overlap or duplicate any workers' compensation benefits. That part of a tort recovery calculated to cover a worker's necessary medical expenses,

---

3. Where an injured party's recovery from one comparatively negligent defendant does not make the injured party whole, the injured party has an incentive to bring claims against another negligent party or perhaps to obtain appropriate insurance in anticipation of this result before the injury is sustained.

however, most likely would duplicate compensation benefits paid on worker's behalf. The judge must therefore analyze and compare the worker's two recoveries in order to determine the extent of duplication, and thus determine the extent of the employer's reimbursement. This assessment must be made after the judge determines the actual amount of tort damages suffered, the elements of damage (including the amounts thereof), the degree of the tortfeasor's fault, and the amount of the tort award or good faith settlement.

### C. Calculating Employer's Interest

{14}   The employer is entitled to only that part of the tort recovery which represents monies paid that *duplicate* compensation it has paid or is liable to pay. The judge must start from the presumption that the employer is entitled to full reimbursement, because, as we said in *Montoya*, "if the worker has dealt with the third party in good faith and at arm's length, then the net amount paid presumptively would be the amount by which the employer's liability is reduced." 114 N.M. at 358, 838 P.2d at 975 (citing *Transport Indemnity*); *see also* 44 Am.Jur.2d *Insurance* § 1818 (1982) (insured's tort recovery shall be presumed to include the full amount of the insurer's sub-

rogated interest, and it is the insured's burden to rebut the presumption with evidence that the recovery includes elements of the cause of action for which there is no right of subrogation).   However, a worker who has resolved her third-party suit can no longer be said, *as a matter of law*, to have been made financially whole. *See Montoya*, 114 N.M. at 357–58, 838 P.2d at 974–75. A worker must be given the opportunity to show, and has the burden to prove, that *in fact* the tort recovery was fairly and reasonably calculated in good faith to compensate for injuries not covered by the benefits the employer has paid.[4] If a worker does so, the worker's compensation judge must apportion a worker's tort recovery into its reasonable elements, and compare those with a breakdown of the compensation benefits paid by employer. An employer has an interest in those elements of the worker's tort recovery which are also covered by worker's compensation, but no interest in those elements of a worker's tort recovery that were calculated in good faith to remedy losses not covered.

{15}   For example, in this case the workers' compensation judge determined that Worker proved just over $367,609 in total tort damages needed to make her whole. The judge divided that sum into the following elements:

| | | |
|---|---|---|
| reasonable medical expenses [5]: | $ 24,969 | (about 7% of the total tort damages) |
| lost wages: | $220,604 | (about 60% of the total tort damages) |
| pain and suffering: | $122,000 | (about 33% of the total tort damages) |

Worker reached a reasonable compromise settlement of $140,000. Apportioning this settlement in the same manner results in

Worker receiving the following elements and amounts:

| | | |
|---|---|---|
| reasonable medical expenses: | $ 9,800 | (7% of the $140,000 settlement) |
| lost wages: | $84,000 | (60% of the $140,000 settlement) |
| pain and suffering: | $46,200 | (33% of the $140,000 settlement) |

These breakdowns are illustrated below:

4.   Of course, the workers' compensation judge might determine that the worker's settlement was not reasonable or was not reached in good faith. In such a case, the employer is entitled to a full reimbursement because worker has not rebutted the presumption.

5.   Worker had unpaid medical expenses in excess of this amount, but the workers' compensation

judge apparently found that these were not reasonable and not attributable to Employer.

# Tort Damage Elements
### damages=$367,609          settlement=$140,000

**{16}** The next step is to compare the settlement breakdown to the elements of the compensation benefits Worker received. Here, Employer paid $24,969 in medical benefits, which was the total amount of Worker's reasonable medical expenses. Because Employer paid 100% of these expenses, 100% of any amount that Worker received in tort for those expenses would duplicate benefits Employer paid. Therefore, Employer is entitled to 100% of the amount worker received in tort settlement for medicals, or $9,800.

**{17}** Employer did not pay the entire amount of Worker's lost wages. Employer paid about $27,000 [6] in disability benefits, which amounts to roughly 12% of the total wages required to make Worker whole ($27,000/$220,604 = .12). Employer is entitled to 12% of the part of Worker's settlement covering lost wages (.12 × $84,000), or $10,080.

**{18}** Employer paid nothing to Worker for pain and suffering. Therefore, Employer is entitled to 0% of Worker's tort settlement for this element. The amount of her settlement intended to compensate for pain and suffering ($46,200) is beyond the reach of Employer. *Cf. Swanson v. Champion International,* 197 Mont. 509, 646 P.2d 1166 (1982) (non-economic elements of wrongful death recovery not subject to workers' compensation lien).

{19} Employer, then, is entitled to $19,-880 in reimbursement, less its proportionate share of fees and costs. Note that Employer would *not* be entitled to draw on Worker's pain and suffering recovery or the remainder of her lost wage recovery to receive full reimbursement for its outstanding medical outlays. *See NMSA 1978,* § 52–5–17 (employer's right to reimbursement is limited "to the extent of payment by the employer" under the Act).

6. Under the statutory scheme in effect at the time, Worker's disability benefits were to be calculated at two-thirds her former wage (or the statutory maximum) for the period of her temporary total disability (until Worker was determined to have reached maximum medical improvement) and then a percent of that amount corresponded to the degree of permanent disability from that point on. It appears that Worker received the statutory maximum of $270.97 from July 9, 1987 to March 30, 1989 and then received ten percent of that, or $27.09, until she voluntarily discontinued benefits. For this and all figures pertaining to lost wages benefits, the workers' compensation judge will have more precise data than that available on the record before this Court.

# Reimbursement

### Settlement

### Wages Allocated

wages: $84,000

p & s: $46,200 to Worker

meds: $9,800 to Employer

Worker: $73,920

Employer: $10,080

### D. Protecting Employer's Interest Through Statutory Subrogation

■ {20} Once the *amount* of the employer's interest in the tort recovery has been determined, we believe the legislature intended that amount to be paid or assigned to the employer under principles of subrogation. *Compare Montoya,* 114 N.M. at 357, 838 P.2d at 974 ("[S]uch [compensation] payment operates as an assignment of the cause of action against the third-party tortfeasor, pro tanto for payments made under the Act.") *with Torres v. Gamble,* 75 N.M. 741, 743, 410 P.2d 959, 960 (1966) (insurer that had made payments to injured insured became subrogated and received an assignment pro tanto of a cause of action upon the insurer's partial payment of a claim). Whether we call this interest a pro tanto assignment, a subrogation lien, or a right of reimbursement is unimportant.[7] *Compare Transport Indemnity v. Garcia,* 89 N.M. at 345, 552 P.2d

at 476 ("The right of reimbursement is the right to receive back that which has been paid to another.") *with White v. Sutherland,* 92 N.M. 187, 190, 585 P.2d 331, 334 (Ct.App. 1978) ("In its normal sense, subrogation gives the payor a right to collect what it has paid from the party who caused the damage."). What is important is that the amount of the employer's interest in any case is determined by *what it has paid for,* and that this interest is protected by legal principles that avoid inequities to employers. Our concern is that we avoid situations where, as here, Worker's trial counsel failed to timely notify Employer of the settlement, or where, as in *St. Joseph Healthcare System v. Travelers Companies,* 119 N.M. 603, 893 P.2d 1007 (Ct.App.1995), the worker disappeared with the entire tort settlement. Enforcement of subrogation principles avoids these situations. *See, e.g., Farmers Insurance Group of Companies v. Martinez,* 107 N.M. 82, 83–84, 752 P.2d 797, 798–99 (Ct.App.1988)

7. We do not find any semantic distinctions among the terms "pro tanto," "reimbursement," "subrogation," and "assignment" to be helpful in determining the *amount* of an employer's reimbursement interest. As noted above, the statute is entitled "Subrogation" but uses the term "assignment" in the text. Courts, not the legislature, have inserted the terms "pro tanto" and "reimbursement" over time. *See, e.g., Kandelin v. Lee Moor Contractors,* 37 N.M. at 487–89, 24 P.2d 735–36; *Reed v. Styron,* 69 N.M. 262, 268–70, 365 P.2d at 915–17; *Castro v. Bass,* 74 N.M. 254, 261, 392 P.2d 668, 674 (Noble, J., dissenting); *Montoya,* 114 N.M. at 357, 838 P.2d at 974.

Other cases distinguish a "right of reimbursement" from "subrogation" and "assignment," and it appears that our courts used such distinctions to determine how to treat the parties' interests. *See, e.g., Royal Indemnity v. Southern California Petroleum Corp.,* 67 N.M. 137, 143–45, 353 P.2d 358, 363–64 (1960); *Herrera v. Springer,* 85 N.M. 6, 7–8, 508 P.2d 1303, 1304–05 (Ct.App. 1973); *Transport Indemnity v. Garcia,* 89 N.M. at 343–44, 345, 552 P.2d at 474–75, 476. None of these cases persuasively justifies determining the *extent* of an employer's interest in a worker's tort recovery on the basis of some distinction among these terms.

(discussing how the interests of an insurer who has paid damages to an insured tort victim are protected by principles of subrogation as against both the tort victim and the third-party tortfeasor).

### E. Other Methods of Allocation

{21} We have carefully considered the various methods of allocation advocated by the parties and amici and conclude that they do not fulfill the legislature's intent. Several of these methods are incorrectly premised on the basis that tort recovery and compensation benefits are freely interchangeable, and do not tie the employer's right to reimbursement to the extent of compensation paid for each element of a worker's recovery.

### 1. Method Advocated by Employer and NMDLA

{22} Employer and amicus New Mexico Defense Lawyers Association (NMDLA) maintain that any tort award a worker receives amounts to double recovery. We have demonstrated that under this interpretation Employer will be erroneously "reimbursed" with pain and suffering proceeds where Employer has paid nothing in satisfaction of this damage element. The legislature did not intend Section 52–5–17 to allow reimbursement to employers of monies which serve tort public policy goals.

### 2. Method Applied by Court of Appeals Majority

{23} The Court of Appeals majority's analysis effectively adopted Employer's position as a premise. It held that "*Montoya* should be read to mean what the statute says—employers are to get a pro tanto reimbursement from a worker's tort recovery to the extent that the employer has paid compensation benefits." *Gutierrez*, 121 N.M. at 178, 909 P.2d at 738. While the statute says nothing about "pro tanto reimbursement," the appeals court assumed that a worker's tort award corresponds interchangeably with compensation benefits, and awarded Employer a full reimbursement, without regard to

the elements of the tort recovery. This does not effectuate the legislature's intent. Since the worker is so low on the priority list, this method discourages workers from pursuing third party claims, particularly in cases where the recovery at stake is modest. As Judge Bosson stated in his dissent:

> Under the facts of this case, the reimbursement may well equal or exceed all that is left of the tort settlement. Yet, Worker suffered substantial, lasting injuries (e.g., lost wages, lost earning capacity, pain and suffering), some of which are not compensated at all under workers' compensation benefits or only partially so. If the City takes the entire tort settlement, Worker will be left with no compensation for these additional injuries. Only the City and Worker's own attorney would benefit from the settlement. Worker gains nothing for her efforts in pursuing the third-party litigation.

121 N.M. at 183, 909 P.2d 743 (footnotes omitted). The majority's construction frustrates the legislature's intent to encourage tort suits where third-party wrongdoers are held responsible. *See Montoya*, 114 N.M. at 357, 838 P.2d at 974 (broader policy is to achieve equitable allocation of responsibility). We also cannot agree with the majority's use of a plain meaning analysis to support this allocation method. Our case law demonstrates that Section 52–5–17 is far from being clear and unambiguous. *Compare Kandelin v. Lee Moor Contracting Co.*, 37 N.M. at 489–90, 24 P.2d at 736–37 (provision may operate by subrogation or assignment), *with Seaboard Fire & Marine Ins. v. Kurth*, 96 N.M. 631, 633, 633 P.2d 1229, 1231 (Ct.App.1980) ("It is clear that in a work[er]'s compensation action the statute created no right of subrogation or assignment in the [employer's] insurer."). We feel the plain meaning analysis caused the Court of Appeals to focus on the prohibition against windfall at the expense of the legislature's broader policy objectives of achieving an equitable distribution of the risk of loss and an equitable allocation of responsibility. *Cf. Montoya*, 114 N.M. at 357, 838 P.2d at 974.[8]

---

8. We caution the Court of Appeals against application of the plain meaning rule to the Act. *See*

*Chavez v. Mountain States Constructors*, 1996 NMSC 070 ¶¶ 23–25, 122 N.M. 579, 584–85, 929

### 3. Method suggested by Dissent and TLA

{24} Judge Bosson's dissent suggests, and amicus New Mexico Trial Lawyers Association (TLA) argues for, an allocation of Worker's tort proceeds based on a determination of comparative fault. *See* 121 N.M. at 185, 909 P.2d at 745 (Bosson, J., dissenting). Amicus also argues that when a worker recovers less than the total damages from a third party because of a worker's comparative negligence, the employer's reimbursement should be proportionately reduced. There is no finding in this case that the Worker was comparatively negligent, and nothing in the record suggests that she was. Even if there were, we fail to see how this would be relevant in determining the amount of reimbursement. The respective fault of the parties is not necessarily connected to the damage elements covered by the tort recovery. For example, if a third party were entirely at fault yet the worker's injuries were largely pain and suffering, as in this case, nothing would prevent the employer from reaching monies fairly negotiated to remedy an uncompensated injury. In such cases, tort recoveries for pain and suffering would go to employers as "reimbursement," contrary to the legislative intent to reimburse only to the extent of payment of compensation by the employer.

### 4. Worker's Method

{25} One of the allocation methods urged by Worker also fails to comply with the intent of the statute. Worker argues that no reimbursement should occur until the amount received in compensation benefits and from the tort recovery *exceeds* her total tort damages. She reasons that until made "whole," there is no windfall. We disagree. This approach unfairly requires an employer to participate in making the injured worker "whole," which is contrary to legislative intent. *Cf.* NMSA 1978, § 52–1–8 (1973) (employer who has complied with the Act shall not be subject to any other liability to a worker). The important differences between the purpose and scope of tort recovery damage elements and the purpose and scope of workers' compensation require that the judge look for duplication or windfall as to *each element* of each recovery.

### 5. The Method Employed by the Workers' Compensation Judge

{26} Worker in the alternative claims that an employer has an equitable right of subrogation under Section 52–5–17, and the judge correctly valued that interest in her case. While we agree that the statute creates a subrogated interest, we are concerned that in other cases the judge's allocation method might include elements of damage for which Employer paid nothing, and might fail to take into consideration the percentage of lost earnings paid by Employer. Thus the method of allocation may not accurately reimburse "to the extent of payment ... by the employer" as required by the statute.

{27} The method used by the judge was to allocate to Employer a percentage of its outlay equal to the percentage of Worker's damages received in tort. The judge found the Worker's tort settlement covered 38% of Worker's total tort damages, then awarded Employer 38% of its compensation outlay. If a worker settles for a partial tort recovery, the judge's method would always result in the employer receiving only a proportionate part for its wages and medical expenses outlay. Under our method, in contrast, the employer may well receive a full reimbursement for the benefits it paid despite the fact that a worker's tort recovery was partial, if

---

P.2d 971, 976–77 (1996) ("This serves as a warning that the plain language rule may not be the best approach to interpreting this statute."). We believe a plain meaning analysis of Section 52–5–17 begs the question. *Coslett v. Third Street Grocery*, 117 N.M. 727, 730, 876 P.2d 656, 659 (in some cases, "judicial adoption of the literal interpretation is an abdication of responsibility."); State ex rel. *Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) ("The assertion in a judicial opinion that a statute needs no interpretation because it is 'clear and unambiguous' is in reality evidence that the court has already considered and construed the act.") (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 45.02 at 5–6 (5th ed.1992)); *see generally Archer v. Roadrunner Trucking Inc.*, 1997 NMSC 003, ¶ 7, 122 N.M. 703, 930 P.2d 1155 (1996).

the worker cannot show that the tort proceeds were intended to cover a non-compensated injury. Absent such a showing, we find no nexus or connection between the degree to which a worker's tort recovery remedies the totality of her injuries and the extent of the employer's right to reimbursement.

### III. Conclusion

{28} We hold that an employer is not necessarily entitled to a full reimbursement from a worker's fair but partial tort recovery. Instead, an employer is entitled to recoup the amount of a worker's duplicative recovery. Those monies a worker reasonably receives in tort to compensate for injuries not addressed by workers' compensation are beyond the reach of the employer. We therefore reverse the decision of the Court of Appeals, and remand this matter to the workers' compensation judge for proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

FRANCHINI, C.J., and SERNA, J., concur.