14 P.3d 532

2000-NMSC-034

**Phil CHAVEZ, Worker–Respondent,**

v.

**S.E.D. LABORATORIES and United States Fidelity & Guaranty Company, Employer–Insurer–Petitioners.**

**Phil Chavez, Worker–Petitioner,**

v.

**S.E.D. Laboratories and United States Fidelity & Guaranty Company, Employer–Insurer–Respondents.**

Nos. 26,227, 26,231.

Supreme Court of New Mexico.

Nov. 20, 2000.

Robert L. Pidcock, Albuquerque, NM, for Worker.

Silva, Rieder & Maestas, P.C., Paul Maestas, Wayne R. Suggett, Albuquerque, NM, for Employer–Insurer.

## OPINION

MINZNER, Chief Justice.

{1} S.E.D. Laboratories (SED) and United States Fidelity & Guaranty Company (USF & G) (jointly, SED/USF & G) appeal from an opinion of the Court of Appeals holding that an employer's right of reimbursement is equal to the amount of an injured worker's duplicative recovery from uninsured motorist benefits and workers' compensation benefits and directing reconsideration of an order requiring Phil Chavez to pay all of his attorney's fees. We affirm these holdings of the Court of Appeals. Chavez appeals from the Court of Appeals' holding that he waived appellate review of the determination that he had returned to work at a wage equal to or greater than his pre-injury wage. We vacate the wage rate determination and remand to the workers' compensation judge (WCJ) for entry of an amended order.

### I.

{2} On October 15, 1993, Chavez, a courier for SED, was involved in an automobile accident with a third-party uninsured motorist. The parties have stipulated that the accident arose from and occurred during Chavez's

employment. As a result of the accident, Chavez suffered two lumbar disk herniations and his resulting disability.

{3} Chavez requested findings of fact that he had suffered between $187,000 and $335,000 in damages including loss of access to the labor market, loss in earning capacity, loss in ability to perform household services, and lost wages. Chavez received workers' compensation benefits under SED's workers' compensation insurance policy with USF & G in the amount of $150.61 per week from October 16, 1993 to June 23, 1994 and $28.65 per week since June 24, 1994. Chavez also received $50,000 in benefits under his mother's uninsured motorist policy with Allstate Company and $60,000 in benefits under SED's uninsured motorist policy with Fireman's Fund Insurance Company.

{4} SED/USF & G instituted an action before the Workers' Compensation Administration (WCA) seeking reimbursement under NMSA 1978, § 52–5–17 (1991) for workers' compensation benefits paid to Chavez on a dollar-for-dollar basis and a determination as to what additional workers' compensation benefits were due and owing Chavez as a result of his accident.[1] The WCJ decided that SED/USF & G was entitled to dollar-for-dollar reimbursement for workers' compensation benefits paid as well as a credit against future payments subject to the agreement to reduce the reimbursement entered into by the parties. The WCJ also determined that Chavez had a permanent impairment rating of seventeen percent and that his permanent partial disability rating is equal to his impairment rating because he returned to work at a wage equal to or greater than his pre-injury wage, *see* NMSA 1978, § 52–1–26(D) (1991), and denied his petition for attorney's fees and sanctions.

{5} Chavez appealed the determinations that SED/USF & G was entitled to dollar-for-dollar reimbursement for workers' compensation benefits paid and that he had returned to work at a wage equal to or greater than his pre-injury wage. The Court of Appeals reversed in part and affirmed in part,

holding that SED/USF & G was only entitled to reimbursement for duplicative recovery received by Chavez and deeming his challenge to the wage rate determination waived due to his failure to cite any evidence that supports the determination. *See Chavez v. S.E.D. Lab.*, 2000–NMCA–034, ¶¶ 27, 29, 128 N.M. 768, 999 P.2d 412. The Court of Appeals declined to reach the attorney's fees issue. *Id.* ¶ 28.

## II.

{6} Section 52–5–17 defines the rights of employers to reimbursement of workers' compensation benefits paid to injured workers who receive compensation for their injuries from other sources. As this Court has long recognized, "[t]he statute plainly intends to prevent dual recovery" by the employee. *Brown v. Arapahoe Drilling Co.*, 70 N.M. 99, 104, 370 P.2d 816, 820 (1962) (referring to 1951 N.M. Laws, ch. 205, § 3, a predecessor of the current Section 52–5–17); *see Montoya v. AKAL Sec., Inc.*, 114 N.M. 354, 355, 838 P.2d 971, 972 (1992) (finding that the primary purposes of Section 52–5–17 are "(1) prohibition against double recovery, and (2) protection of the employer's right to reimbursement from the proceeds of the third-party action"); *Gutierrez v. City of Albuquerque*, 1998–NMSC–027, ¶ 10, 125 N.M. 643, 964 P.2d 807 (stating *Montoya* recognized "that the employer's reimbursement is bottomed on the principle that a worker must not receive a windfall").

{7} In order to prevent a worker from receiving such a windfall, we have held that "an employer is entitled to recoup the amount of a worker's duplicative recovery." *Gutierrez*, 1998–NMSC–027, ¶ 28, 125 N.M. 643, 964 P.2d 807. To determine the amount of a worker's duplicative recovery, we have held that a WCJ must do an element-by-element comparison of the amounts recovered by the worker from third parties and those benefits paid by the employer. *Id.* ¶ 14.

---

1. SED/USF & G's claim for reimbursement is based solely upon Chavez's recovery of $60,000 under the Fireman's Fund uninsured motorist policy. SED/USF & G does not base any claim upon Chavez's $50,000 recovery under the Allstate uninsured motorist policy.

{8} Applying *Gutierrez*, the Court of Appeals held SED/USF & G was entitled solely to reimbursement and potential future offset credit for those uninsured motorist benefits that duplicated the workers' compensation benefits paid or to be paid to Chavez. *Chavez*, 2000–NMCA–034, ¶ 24, 128 N.M. 768, 999 P.2d 412. The case was then remanded for an element-by-element analysis in order to determine the amount of duplicative recovery. *Id.*

{9} SED/USF & G contends that the Court of Appeals erred in requiring the application of the *Gutierrez* element-by-element analysis because subsection (C) of Section 52–5–17 has a different goal than subsections (A) and (B). SED/USF & G argue that the goal of Section 52–5–17(C) is the prevention of a worker's double recovery from his or her employer. SED/USF & G reasons that when a worker collects both workers' compensation benefits from his or her employer and uninsured motorist benefits from an insurance policy paid for by the employer, under Section 52–5–17(C) the worker must reimburse the employer the workers' compensation benefits paid on a dollar-for-dollar basis.

{10} We reject the argument that the concern of subsection (C) of Section 52–5–17 is substantively different than that of subsections (A) and (B) and conclude that the Court of Appeals was correct in requiring application of the *Gutierrez* element-by-element analysis in order to determine the amount of duplicative recovery. We reach this result on the basis of a brief review of the history of Section 52–5–17(C) and its predecessor, the purposes of the uninsured motorist statute, NMSA 1978, § 66–5–301 (1983), and the governing canons of statutory construction.

{11} New Mexico's first subrogation statute, 1929 N.M. Laws, ch. 113, § 24, created a right in employers to obtain reimbursement for workers' compensation benefits paid where the injured employee received compensation for his or her injuries in tort. As a successor of 1929 N.M. Laws, ch. 113, § 24, Section 52–5–17 maintained this right of employers and adopted language that is substantially similar to its predecessor.

{12} We first addressed the issue of whether the subrogation statute covered uninsured motorist benefits stemming from a policy paid for by an employer in *Continental Insurance Co. v. Fahey*, 106 N.M. 603, 747 P.2d 249 (1987). We held that a worker's receipt of uninsured motorist benefits was not the same as a recovery from a tortfeasor and was not covered by the subrogation statute. *Id.* at 606, 747 P.2d at 252. In reaching this result, we noted that granting a right of reimbursement to an employer where an injured employee has received uninsured motorist benefits would "penalize[ ] the insured for his or her providence in purchasing uninsured motorist coverage." *Id.*

{13} In response to our decision in *Continental Insurance*, the Legislature amended Section 52–5–17 to create a right of reimbursement in employers for workers' compensation benefits paid when the injured worker has received uninsured motorist benefits from a policy paid for by the employer. *See* § 52–5–17(C). The new subsection (C) provides:

The worker or [the worker's] legal representative may retain any compensation due under the uninsured motorist coverage provided in Section 66–5–301 NMSA 1978 if the worker paid the premium for that coverage. If the employer paid the premium, the worker or [the worker's] legal representative may not retain any compensation due under Section 66–5–301 NMSA 1978, and that amount shall be due to the employer. For the purposes of this section, the employer shall not be deemed to pay the premium for uninsured motorist coverage in a lease arrangement in which the employer pays the worker an expense or mileage reimbursement amount that may include as one factor an allowance for insurance coverage.

The Legislature specifically exempted uninsured motorist policies purchased by employees from the subrogation statute so as to continue to encourage employees to purchase their own uninsured motorist coverage.

{14} In *Draper v. Mountain States Mutual Casualty Co.*, 116 N.M. 775, 867 P.2d 1157 (1994), we first examined the right of reimbursement created by Section 52–5–

17(C). Literal application of the terms of Section 52–5–17(C) would have yielded the nonsensical result that "the employer receive more money than it is paying its employee in workers' compensation benefits when it is the employee who suffered the injury." *Id.* at 778, 867 P.2d at 1160. It also would have placed Section 52–5–17 in conflict with the goals of the uninsured motorist statute, *see* § 66–5–301, under which "[t]he legislature intended that an injured person be compensated to the extent of insurance liability coverage purchased for his or her benefit." *Jimenez v. Foundation Reserve Ins. Co.,* 107 N.M. 322, 324, 757 P.2d 792, 794 (1988). Our holding rested on the consequences of literal application of Section 52–5–17(C) and two longstanding canons of statutory construction. First, "the intention of the lawmaker will prevail over the literal sense of the terms, and [the statute's] reason and intention will prevail over the strict letter." *Martinez v. Research Park, Inc.,* 75 N.M. 672, 677, 410 P.2d 200, 203 (1965), *overruled on other grounds by Lakeview Invs., Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 155, 520 P.2d 1096, 1100 (1974); *accord Roth v. Thompson,* 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992) ("The chief aim of statutory construction is to give effect to the intent of the legislature."). Second, we "read the act in its entirety and construe each part in connection with every other part to produce a harmonious whole." *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). We held that "[t]he plain language of the post-*Continental Insurance* statute is evidence that the legislature intended to *prevent an employee's double recovery* from discrete and independent insurance coverage provided by the employer." *Draper,* 116 N.M. at 778, 867 P.2d at 1160 (emphasis added).

{15} After *Draper,* it is clear that the focus of all subsections of Section 52–5–17 is on preventing an employee's double recovery of benefits. Correspondingly, an employer is entitled to all monies that duplicate workers' compensation benefits paid. In order to prevent an employee's double recovery and provide an employer its due reimbursement, a court first must determine the amount of duplicative recovery. In *Gutierrez,* we held that an element-by-element comparison of the tort recovery received and the workers' compensation benefits received was the proper method for determining an employee's duplicative recovery. We agree with the Court of Appeals that the *Gutierrez* methodology is applicable to the receipt of uninsured motorist benefits under Section 52–5–17(C).

{16} Our decision to apply *Gutierrez* to uninsured motorist benefits under Section 52–5–17(C) is supported by reference to the aims of the uninsured motorist statute. Uninsured motorist statutes are designed to place the injured party in the same position he or she would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured motorist protection purchased for the insured's benefit. *See Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985). The dollar-for-dollar method of reimbursement urged by SED/USF & G would not put injured workers in the same position they would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured motorist protection purchased for the insured's benefit. Application of the dollar-for-dollar method of reimbursement would yield the inevitable and illogical result that workers injured by tortfeasors who have insurance would receive more complete compensation than workers injured by tortfeasors who do not have insurance. This result would occur because workers injured by insured tortfeasors would only be required to reimburse employers the amount of duplicative recovery, while workers injured by uninsured tortfeasors would be required to reimburse employers on a dollar-for-dollar basis. Such a result cannot be reconciled with the aims of the uninsured motorist statute. Accordingly, we affirm the Court of Appeals' decision to apply *Gutierrez* to the receipt of uninsured motorist benefits.

## III.

{17} Chavez argues that on appeal the Court of Appeals erred in holding he waived his challenge to the determination that he returned to work at a wage equal to or greater than his pre-injury wage. The

Court of Appeals, *Chavez,* 2000–NMCA–034, ¶ 27, 128 N.M. 768, 999 P.2d 412 based its holding on Chavez's failure to cite any evidence that supported the determination. *See* Rule 12–213(A)(3) NMRA 2000 ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing upon the proposition[.]"). Based on the findings of fact in the compensation order, Chavez argues no evidence exists that could be cited in support of the determination. We do not find merit in Chavez's contention.

{18} Chavez testified that he receives $44.00 per hour for work performed using his tractor. Though the record is silent as to the percentage of Chavez's work that is performed using the tractor, this evidence could support the determination of the WCJ that Chavez had returned to work at a wage rate equal to or greater than his pre-injury wage rate. Chavez's failure to cite this evidence to the Court of Appeals provides an adequate ground for the decision by that Court to deem Chavez to have waived his challenge to the sufficiency of the evidence under Rule 12–213(A)(3). Rule 12–213(A)(3) is designed to promote judicial economy by requiring appellants challenging the sufficiency of the evidence to provide an appellate court with a summary of all relevant evidence instead of relying upon the court to review the record independently and prepare its own summary. Chavez has failed to comply with his obligation to present "the substance of the evidence bearing upon the proposition." *Id.* Accordingly, we affirm the Court of Appeals' decision to waive Chavez's challenge to the sufficiency of the evidence supporting the determination of the WCJ that Chavez returned to work at a wage equal to or greater than his pre-injury wage.

{19} Although we will not address the merits of Chavez's sufficiency of the evidence argument, we will address the more limited question of whether the findings of fact support the conclusion of law that Chavez's permanent partial disability rating is equal to his impairment rating because he returned to work at a wage equal to or greater than his pre-injury wage. *See Thompson v. H.B. Zachry Co.,* 75 N.M. 715, 716, 410 P.2d 740, 741–42 (1966) (stating that implicit in an argument that a conclusion of law is not supported by substantial evidence is a contention that the conclusion of law is not supported by the necessary finding of fact). A conclusion of law cannot be sustained unless it finds support in one or more findings of fact. *Id.* at 716, 410 P.2d at 742. Findings are sufficient if, taken together and construed in support of the judgment, they justify that judgment. *See H.T. Coker Constr. Co. v. Whitfield Transp., Inc.,* 85 N.M. 802, 804, 518 P.2d 782, 784 (Ct.App.1974). In this case, the ultimate findings do not support the conclusion of law and in fact conflict with that conclusion.

{20} The compensation order contains a finding that Chavez's average weekly wage was $226.21. Over the course of a fifty-two-week year, Chavez's yearly pre-injury wage would be $11,762.92. Chavez returned to work for his own small business sometime after August 1, 1995, performing yard work and landscaping. The WCJ found that Chavez had a gross income of $3137.00 in 1995 and a net income of $13.00. The WCJ further found that Chavez had a gross income of $4684.33 through September of 1996 and that while no net income had been calculated Chavez's 1996 expenses were estimated to be approximately the same as in 1995. Assuming Chavez's income over the last three months of 1996 to be proportionate to his income over the first nine months of 1996, Chavez would have had a gross income of $6245.77 in 1996 and a net income of $3121.77. Comparing Chavez's pre-injury yearly net income of $11,726.92 to his post-injury net income of $3121.77 in 1996, we do not understand how the WCJ reached the determination that Chavez's post-injury wage was equal to or greater than his pre-injury wage.

{21} Apart from these numbers, the WCJ noted her determination was based in significant part on the fact that Chavez's business was seasonal and that he was self-employed. Chavez's testimony at trial was that his business was steady from February through November and that it slowed some in the winter months of December and January. Even

assuming that the characterization of Chavez's business as seasonal is correct, it is unclear how the WCJ could have determined that Chavez had earned more than $8500 during his two-month slowdown.

{22} The findings of fact in the compensation order do not logically lead to, and in fact conflict with, the determination that Chavez returned to work at a wage equal to or greater than his pre-injury wage. We believe that when a determination is unsupported, justice requires a remand for entry of proper findings and conclusions. *See Prater v. Holloway*, 49 N.M. 353, 356, 164 P.2d 378, 380 (1945); *see also Kruskal v. Moss*, 1998–NMCA–073, ¶ 10, 125 N.M. 262, 960 P.2d 350 (stating that justice required a remand where "the trial court's findings and conclusions fail to adequately disclose how it arrived at its decision"). Accordingly, we affirm the Court of Appeals' holding that Chavez waived his right to challenge the wage rate determination by failing to cite facts that support the determination, but we vacate the compensation order containing that determination. We remand the matter for entry of amended findings and conclusions and an amended compensation order.

### IV.

{23} The WCJ also ruled that Chavez was not entitled to have his attorney's fees paid in part by his employer because he had rejected SED/USF & G's pretrial offer of judgment, which the WCJ concluded was more favorable to Chavez than the results at trial. *See* NMSA 1978, § 52–1–54(F)(3) (1991). The Court of Appeals declined to reach the issue of whether SED/USF & G's offer of judgment was more or less favorable to Chavez than the results at trial because of its decision to remand the case for recalculation of SED/USF & G's right to reimbursement. We agree that the WCJ should reconsider the issue of attorney's fees on remand after recalculating the right to reimbursement. We therefore also affirm the Court of Appeals' holding on this issue.

### V.

{24} Based on the foregoing analysis, we affirm the Court of Appeals on the issues of reimbursement, attorney's fees, and the sufficiency of the evidence challenge to the wage rate determination. We vacate the compensation order entered in this case, however, because the evidentiary findings of fact do not support, and in fact conflict with, the conclusion of law that Chavez returned to work at a wage equal to or greater than his pre-injury wage. We also vacate the subsequent orders detailing the amount of reimbursement and ruling on Chavez's petition for attorney's fees and sanctions. We remand the matter for determination of the amount of Chavez's duplicative recovery, reconsideration of whether Chavez returned to work at a wage equal to or greater than his pre-injury wage, as well as for reconsideration of his petition for attorney's fees, and entry of an amended order or orders. In reconsidering the attorney's fees issue, the WCJ should consider the efforts of Chavez's attorney on appeal. *See* § 52–1–54(I).

{25} **IT IS SO ORDERED.**

BACA, FRANCHINI, SERNA, and MAES, JJ., concur.

