This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**TIMOTHY L. HARTNETT**,

　　Worker-Appellee/Cross-Appellant,

**v.**　　　　　　　　　　　　　　　　　　**NO. 31,455 (consolidated with NO. 31, 535)**

**PAPA JOHN'S PIZZA**, and
**NEW HAMPSHIRE INSURANCE COMPANY,**
**C/O GAB ROBBINS,**

　　Employer-Insurer-Appellants/Cross-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory Griego, Judge**

Patrick Larkin Fogel
Albuquerque, NM

for Worker-Appellee/Cross-Appellant

Hale & Dixon, P.C.
Timothy S. Hale

Albuquerque, NM

for Employer-Insurer/Appellants/Cross Appellees

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Papa John's Pizza (Employer) appeals the workers' compensation judge's (WCJ) order requiring that Employer rehire Timothy Hartnett (Worker) in Atlanta, Georgia, after Employer terminated Worker from his position in New Mexico. Among other arguments regarding the order of rehire, Employer contends that the WCJ improperly applied NMSA 1978, § 52-1-50.1 (1990) because Worker did not stop working due to, nor was he terminated based on his work injury.  Worker separately appeals the WCJ's final Compensation Order, requiring Worker to reimburse Employer $5,826.00 out of Worker's third-party tort recovery from the work accident.  Worker argues that the reimbursement amount was inaccurately calculated because it took into account the amounts Employer paid to Worker as a result of Worker's termination.  The two appeals were consolidated and are jointly addressed herein.  We reverse the WCJ's order of rehire because the nature of Worker's termination was unrelated to his injury and therefore did not qualify for compelled rehire. We affirm the WCJ's reimbursement calculations, which correctly included amounts Employer paid to Worker as a result of the work accident.

## I.    BACKGROUND

{2}    Employer employed Worker as a senior director of operations in New Mexico. On August 14, 2007, Worker was in a motor vehicle accident while traveling from one of Employer's locations to Employer's new employee training facility. Although Worker sustained some injuries from the accident, Worker was able to return to work the next day, and continued working for Employer for two more months until his termination. On October 17, 2007, Employer terminated Worker for allegedly submitting false expense reports. At the time, Worker had neither missed no more than a single day of work due to his accident, nor submitted any claim related to the accident.

{3}    Four months after his termination, Worker filed a claim for workers' compensation benefits for injuries sustained in the motor vehicle accident. The WCJ deemed the accident to be incidental to his employment and awarded workers' compensation benefits. Because Worker settled with the third-party tortfeasor who injured him in the motor vehicle accident at issue in this case, the WCJ ordered Worker to reimburse Employer for lost wages and medical expenses paid in the amount of $5,826.00. The WCJ also ordered that Employer rehire Worker, and that Worker be placed in a director of operations position scheduled to open in Atlanta, Georgia. We discuss the facts in more detail as necessary below.

3

## II.    DISCUSSION

{4}    "We review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. "In applying whole record review, this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder." *Gonzalez v. Performance Painting, Inc.*, 2011-NMCA-025, ¶ 14, 150 N.M. 306, 258 P.3d 1098 (internal quotation marks and citation omitted), *cert. granted*, 2011-NMCERT-003, 150 N. M. 620, 264 P.3d 251. Despite the existence of conflicting evidence "the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Id.* (internal quotation marks and citation omitted).

{5}    We review statutory interpretation de novo. *Kahrs v. Sanchez*, 1998-NMCA-037, ¶ 11, 125 N.M. 1, 956 P.2d 132. When performing statutory construction, "our guiding principle is to determine and give effect to legislative intent." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. "[The] plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent. The court will not read

4

into a statute . . . language which is not there, particularly if it makes sense as written." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 27, 127 N.M. 120, 978 P.2d 327 (internal quotation marks and citations omitted).

**A.      The Order of Rehire Was Improper**

{6}      Employer argues that the order to rehire was improper because Worker was terminated "due to his submission of false information on expense reports." Employer states that because "Worker was not terminated due to the auto accident, and certainly was not terminated due to any alleged limitations on his ability to perform his work[,] Worker cannot satisfy . . . [Section] 52-1-50.1." Employer contends that "[n]othing in [Section] 52-1-50.1 contemplates rehire of a terminated employee, where that employee was terminated for reasons unrelated to the work injury."

{7}      We agree. A plain language reading of Section 52-1-50.1 indicates that the worker must have ceased working due to the work injury for the WCJ to order rehire. Section 52-1-50.1 states:

> If an employer is hiring, the employer shall offer to rehire the employer's worker *who has stopped working due to an injury* for which the worker has received, or is due to receive, benefits under the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] and who applies for his pre-injury job or modified job similar to the pre-injury job, subject to the following conditions:
>
>           (1)   the worker's treating health care provider certifies that the worker is fit to carry out the pre-injury job or modified work similar to the pre-injury job without significant risk of reinjury; and

5

(2)   the employer has the pre-injury job or modified work available.

(Emphasis added.) The policy behind this provision is to give Worker the opportunity to return to employment after stopping work due to the work-related injury. It would be inconsistent with our case law and policy behind at-will employment to require employers to rehire at-will employees terminated for reasons unrelated to the work injury. *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 22, 131 N.M. 607, 41 P.3d 333 (stating that as a general rule, employment at-will can be terminated by either the employer or the employee for any reason or for no reason at all). *But see Whittington v. State Dep't of Pub. Safety*, 2004-NMCA-124, ¶ 17, 136 N.M. 503, 100 P.3d 209 ("New Mexico recognizes two exceptions to the doctrine of at-will employment: breach of implied contract and retaliatory discharge.").

{8}   Although Worker was injured and received benefits, the record reveals that Worker's termination was not the result of his injury as is required by Section 52-1-50.1 to obtain an order of rehire. Despite the fact that the WCJ determined that Worker's termination was not for good cause, the WCJ also concluded that "[t]he termination of . . . Worker was not retaliatory for pursuing a workers' compensation claim." The record reveals that following his injury, Worker successfully continued working his normal job for two months and that Employer's reason for firing Worker was instead based upon Worker's alleged falsification of expense reports. We agree

6

with the WCJ that "[t]he motives of Worker's supervisor in the investigation [which led to his termination] are unclear. The timing of the investigation seems inconsistent with a motive tied to a claim for workers' compensation benefits. Whatever the motive, there was clear rush to judgment." Indeed, the termination preceded Worker's claim for compensation benefits, and the record reveals nothing to indicate that the termination was accident-related. Based on our review of the record, we therefore also agree that "[t]here is an inadequate record in this case to demonstrate that Worker was terminated because of his seeking workers' compensation benefits" or because of his injury. Even though Employer's investigation appears hurried, we have found no evidence in the record to indicate that Worker's termination was motivated by his work-related injury.

{9}     Worker notes that he missed one day of work due to his injury, and "contends that missing [one] day of work satisfies the statutory requirement." For support, Worker cites Wisconsin case law where a worker was fired several days after being injured on the job because he missed one day of work as a result of a doctor's appointment for the work-related injury, despite giving his employer notice of the appointment. *Link Indus., Inc. v. Labor and Indus. Review Comm'n*, 415 N.W.2d 574, 575-76 (Wis. Ct. App. 1987). In *Link Industries*, the employer argued that only workers who were unemployed for a significant period of time recuperating from a

disabling injury were covered by the statute that required rehiring. *Id*. at 576. The court held that the Wisconsin workers' compensation statute did not require that the worker suffer a significant period of disability in order to be within the protection of the statute. *Id.* at 576-77. But, *Link Industries* is inapplicable with regard to both the law and facts at issue in the present appeal. First, unlike its New Mexico counterpart, Wisconsin's rehire statute does not expressly require that the worker stop working due to the injury. *See* Wis. Stat. Ann. § 102.35(3) (2012). Second, the worker in *Link Industries* was clearly fired as a *result* of his injury because he could not attend work due to a doctor's appointment at which he sought medical care for his injury. 415 N.W.2d at 575-76. In contrast, Worker in this case continued to perform his job for two months before being terminated for falsifying expense reports. Thus, *Link Industries* is inapplicable here.

{10} Worker additionally argues that by requiring the termination to be caused by the work-related injury, we "discriminate against workers who could return to work immediately after an accident." Worker states that this construction of the statute "would potentially cause New Mexico's workers to stay out of work to avoid losing their benefits under the Workers' Compensation Act." Worker cites no support from our case law for this proposition. We do not respond to arguments that lack authority. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't,* 1998-NMCA-078, ¶ 10, 125

N.M. 244, 959 P.2d 969. Moreover, we do not find Worker's argument to be a logical construction of Section 52-1-50.1. If a worker can return back to work immediately after being injured, then he or she has no reason to seek rehire. In no way does our plain language construction of the statute encourage workers to remain out of work. This construction simply limits application of the rehiring statute to instances where the injury caused the employee to lose his job.

{11}   Because Worker was not terminated due to his injury, we reverse the WCJ's order requiring Employer to rehire Worker.

**B.      The WCJ Accurately Calculated Employer's Reimbursement**

{12}   In Worker's own appeal, Worker asserts that the WCJ miscalculated the indemnity payments that Worker owes Employer as a result of Worker's settlement with the third-party tortfeasor who caused his injuries. Worker argues that Employer should receive no indemnity payments for funds it paid to Worker as a result of Worker's termination.

{13}   Under NMSA 1978, § 52-5-17 (1990), if a worker recovers from a third-party tortfeasor for injuries or disablement at issue in his workers' compensation case, the employer is entitled to indemnity for the compensation and benefits paid to the worker. In *Gutierrez v. City of Albuquerque*, 1998-NMSC-027, ¶ 14, 125 N.M. 643, 964 P.2d 807, our New Mexico Supreme Court held that in order to keep his recovery

9

from a third-party tortfeasor, the "worker . . . has the burden to prove, that *in fact* the tort recovery was fairly and reasonably calculated in good faith to compensate for injuries not covered by the benefits the employer has paid." When the worker makes this showing, "the workers' compensation judge must apportion a worker's tort recovery into its reasonable elements, and compare those with a breakdown of the compensation benefits paid by employer." *Id.* The employer has an interest in and will be reimbursed for the "elements of the worker's tort recovery which are also covered by worker[s'] compensation, but [possesses] no interest in those elements of a worker's tort recovery that were calculated in good faith to remedy losses not covered." *Id.* The WCJ determines the amount of the employer's "reimbursement for compensation paid . . . by identifying the nature and purpose of the payments made by the employer, and comparing the elements of the tort recovery with those which are duplicative of the employer's compensation payments. The total of the duplicative payments is the amount which must be reimbursed." *Id.* ¶ 8.

{14}     After thoroughly reviewing the WCJ's calculations, we conclude that the WCJ accurately calculated and compensated Employer for the amounts of the tort recovery that were duplicative of Employer's compensation, less Employer's share of the costs, following the *Gutierrez* line of analysis. The WCJ determined the percentages of Worker's medical expenses and lost wages paid by Employer, and the amount of

10

medical expenses and lost wages recouped by Worker in his settlement with the third-party tortfeasor. Then, the WCJ correctly determined the fraction of the tort recovery Employer was owed, less its share of the costs for litigation of the third-party action.

{15}     On appeal, Worker argues that the WCJ erred by including lost wages beyond those incurred in the single day he could not work as a result of the injury in its calculation of the amount of lost wages paid by Employer. In this case, Employer paid one day of lost wages for the date of the accident, August 14, 2007. Thereafter, Worker resumed work with Employer at his pre-injury wage until October 17, 2007, when he was terminated for reasons unrelated to the accident or this workers' compensation action. While Worker was working for Employer, no total disability or modifier payments were due because he was working at his regular wage. Once Worker was terminated, total disability and modifier payments became due because the WCJ determined that the termination was not for good cause. Worker argues that the total disability payments and modifier funds paid in lieu of wages after Worker's termination would never had been paid by Employer if Employer had not terminated Worker. Worker contends that "[n]either of these elements were caused by the traffic accident of August 14, 2007 and neither are eligible to be reimbursed from the [third-]party tortfeasor recovery." Worker states that if he had "continued in his employment with [E]mployer, Worker would only be entitled to be paid permanent

11

partial disability based on his impairment." Thus, Worker believes that the indemnity calculation is incorrect, as Employer should only be reimbursed for the much lesser amount it contributed for permanent partial disability benefits.

{16}     We agree with Employer that the WCJ accurately calculated Employer's reimbursement.  Here, the right to compensation from Employer under the Workers' Compensation Act derives entirely from the personal injury that was incurred on the job and proximately caused by an accident arising out of the employment.  NMSA 1978, § 52-1-9 (1973).  The WCJ did not calculate any benefits to be independently based on Employer's act of terminating Worker for the falsification of an expense report.  In this case, all recovery awarded by the WCJ derived from the automobile accident suffered by Worker.  And, Worker's third-party tort recovery derives directly from that same injury.  Without the motor vehicle accident, Worker would not have been able to recover any lost wages from Employer after his termination through workers' compensation because the termination was entirely unrelated to the accident. The  total disability and modifier payments paid to Worker by Employer were solely a product of the accident and the workers' compensation claim.  Worker's assertion in this regard in essence seeks to maintain two recoveries for the same injury, one through the Workers' Compensation Act and the other through his separate civil tort claim against the third-party tortfeasor.  Our workers' compensation case law firmly

establishes that multiple recoveries for a single injury are disallowed. *Draper v. Mountain States Mut. Cas. Co.*, 116 N.M. 775, 778, 867 P.2d 1157, 1160 (1994) ("The plain language of the . . . statute is evidence that the [L]egislature intended to prevent an employee's double recovery from discrete and independent insurance coverage provided by the employer."); *Brown v. Arapahoe Drilling Co.*, 70 N.M. 99, 105, 370 P.2d 816, 820 (1962) ("The intent of the statute is to prevent double recovery[.]"); *Transport Indem. Co. v. Garcia*, 89 N.M. 342, 345, 552 P.2d 473, 476 (Ct. App. 1976) ("The underlying concern with third party actions is that the claimant will receive a double recovery. That is, double compensation for the same injury." (internal quotation marks and citation omitted)).

**{17}** Because our careful review of the record confirms the substance and accuracy of the WCJ's indemnity calculations, we affirm that portion of the WCJ's order.

**III.  CONCLUSION**

**{18}** For the reasons stated above, we reverse and remand the WCJ's order of rehire, but affirm the WCJ's order regarding the amount of indemnity owed to Employer.

**{19}  IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

13

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**