2004-NMCA-009

82 P.3d 985

**In the Matter of Domenic J. PARADISO, deceased worker, and Robert and Frances Doak, as parents and guardians of Nicholas and Joshua Paradiso, minors, Worker–Appellees,**

v.

**TIPPS EQUIPMENT and Food Industry Self–Insurance Fund, Employer/Insurer–Appellants.**

**No. 23,562.**

Court of Appeals of New Mexico.

Nov. 20, 2003.

Certiorari Denied, No. 28,411, Jan 8, 2004.

David Duhigg, John J. Duhigg, Duhigg, Cronin, Spring, Berlin & Bencoe, P.A., Albuquerque, NM, for Appellees.

Paul L. Civerolo, Sturges & Houston, P.C., Albuquerque, NM, for Appellants.

## OPINION

SUTIN, Judge.

{1} Tipps Equipment (Employer) and Food Industry Self–Insurance Fund (Insurer) appeal adverse decisions of a Workers' Compensation Judge (WCJ) denying enforcement of a settlement agreement and granting summary judgment awarding compensation based on findings of fact entered in a parallel district court action in which the court determined it had jurisdiction to award reimbursement to Insurer and thereafter ordered reimbursement. We affirm.

## BACKGROUND

{2} Domenic Paradiso (the decedent) was killed in 1997 while employed by Employer, leaving two minor children (Children) born in 1995 and 1996. Two actions ensued, one, a wrongful death action in district court, and the other, a proceeding in the Workers' Compensation Administration (WCA) under the Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through

2003) (the Act), and the Workers' Compensation Administration Act, NMSA 1978, §§ 52-5-1 to -21 (1986, as amended through 2003) (the WCA Act). We will refer to Employer and Insurer together as Insurer, because their interests are the same.

{3} The personal representative of the decedent's estate, Frances Doak, and Children, through their parent (mother) and next friend, Antoinette Romero, filed a wrongful death action against a cattle rancher and the New Mexico State Highway and Transportation Department. In October 1999, anticipating a lump sum settlement in the action, Children interpled Insurer based on Insurer's reimbursement right under the WCA Act. At the time of the interpleader, Insurer had paid the decedent's medical and funeral expenses and had been paying workers' compensation benefits to Children. The court permitted the plaintiffs to interplead Insurer "for the limited purpose of determining the reimbursement right of [Insurer]."

{4} An attorney was appointed both Children's Guardian Ad Litem to advise the court and Children's Conservator. This attorney's law firm (the law firm) represented Conservator and Guardian. Another attorney was appointed Guardian of Children to receive and manage all monetary benefits arising out of the death of the decedent for the benefit of Children and to meet with the mother of Children on a regular basis to develop a plan for the spending of Children's benefits.

{5} In December 1999, the plaintiffs and the defendants settled the claims in the district court action. The court approved the settlement and a stipulated order was entered in March 2000 dismissing the wrongful death action based on the settlement. The issue of Insurer reimbursement remained before the district court.

{6} In their interpleader complaint to determine Insurer's reimbursement right, the plaintiffs alleged that Insurer had paid 136.25 weeks of indemnity benefits. The plaintiffs asserted that the total indemnity benefits payable would be for 700 weeks at $363.60 per week, totaling $254,520, and that the potential reimbursement claim of Insurer could be the $254,520 amount, plus medical and funeral benefits already paid. Insurer

responded by alleging that 146.25 weeks had been paid and alleging its entitlement to full reimbursement for those weeks of paid compensation, and admitting that if the estate or Children were entitled to 700 weeks, the total compensation would be $254,520, but that "this is subject to application of New Mexico cases and authorities."

{7} Insurer asserted, however, that the district court lacked subject matter jurisdiction because the WCA had exclusive subject matter jurisdiction to determine the amount of reimbursement due from a third party settlement under Section 52-5-17. Children countered that the court had jurisdiction to decide the reimbursement issue.

{8} In August 2000, while the reimbursement issue was pending in district court, Insurer filed a workers' compensation complaint in the WCA for calculation and protection of its "full statutory right of reimbursement." Insurer claimed that under *Montoya v. AKAL Security, Inc.*, 114 N.M. 354, 358, 838 P.2d 971, 975 (1992), Children had been made whole by the third party settlement in the wrongful death action but that, in the district court proceedings, the parties had not settled the question of right to reimbursement. Insurer sought WCA adjudication of the issue. Children, through Guardian, sought a dismissal of Insurer's WCA complaint on the ground that the district court, having concurrent jurisdiction and having first acquired jurisdiction, "retains jurisdiction."

{9} In the WCA proceeding, the law firm represented "Worker," who was described in the caption as "In the Matter of Domenic J. Paradiso, deceased, and Antoinette Romero as parent and natural guardian of Nicholas and Joshua Paradiso, minors," hereafter, referred to as Children. The law firm also represented both Guardian and Conservator for Children.

{10} In October 2000, a WCA mediator recommended that Insurer had "a dollar for dollar reimbursement right under relevant case law." On behalf of "Worker," the law firm refused to participate in the mediation process. By special appearance, Children asserted that the WCA had no jurisdiction

and Children also rejected the recommended resolution. In November 2000, the district court entered an order determining that it and the WCA "would have jurisdiction to hear the issues presented," and that the court was "the proper forum for hearing on the merits," and was "a proper forum for disposition of the [reimbursement] claims." In December 2000, a WCJ stayed the WCA action pending the district court's determination of the issues before the court.

{11} Following an evidentiary hearing, the district court entered findings of fact in June 2001 relating to both the wrongful death settlement and the reimbursement issue. Based on several supporting findings, the district court found that the settlement amount of $630,000 was fair and reasonable. Based on several other supporting findings, the court concluded that Insurer was entitled to reimbursement by Conservator in the amount of $50,063.

{12} Children sought entry of an order reflecting that Insurer owed the balance due on its 700–week benefits obligation. Rejecting that proposed order because the 700–week benefits issue "wasn't litigated," because the WCA had exclusive jurisdiction "to determine how much the remaining amounts are owed," and because Children were not foreclosed from pursuing that determination in the WCA, the court entered an order on August 9, 2001, stating:

> 1. Pursuant to the Court's Findings of Fact and Conclusions of Law, the Conservator ... shall pay reimbursement to the [Insurer] in the amount of $50,063.00.
>
> . . . .
>
> 3. The sole issue before the Court was the amount of reimbursement under § 52–5–17 to be paid by the Conservator to [Insurer] for benefits from the Third Party death settlement. No finding or conclusion entered herein shall affect the rights of any party on other issues pertaining to Workers' Compensation benefits.

This order ended the district court action and no party appealed from that order.

{13} The parties moved back over to the pending WCA proceeding. Children filed a motion in August 2001 asking the WCJ to take judicial notice of and accept the findings of fact of the district court. Children asserted that the district court had jurisdiction to determine the question of reimbursement and that the court applied "the *Gutierrez* formula" in determining that question. *See Gutierrez v. City of Albuquerque*, 1998–NMSC–027, 125 N.M. 643, 964 P.2d 807 (creating a formula for determining an equitable WCA allocation of third party recovery settlement proceeds). The crux of this motion was that the court's employment of the *Gutierrez* formula, together with the court's entry of findings of fact, including its findings that under the Act "benefits are payable for a total of 700 weeks," and that Insurer's "obligation was for the payment of lost wages in the amount of $254,520.00 as Workers' Compensation benefits," amounted to an adjudication of the issue of Children's right to further compensation benefits.

{14} Insurer responded in November 2001 that the issue of whether the court adjudicated Children's right to further compensation had already been raised by Children in the district court, after the court entered its findings, and that the court stated that the issue had not been litigated. Insurer emphasized that "the *sole* issue for disposition before the District Court was the issue of [Insurer's] reimbursement right," and that the court "clarified its ruling that the *sole* issue tried ... was the issue of reimbursement only." In addition, Insurer asserted that the WCJ's exclusive jurisdiction of the issue required the WCJ to determine the issues in an evidentiary hearing.

{15} In a settlement conference on October 2, 2001, before a WCJ acting as mediator, the parties orally agreed to a settlement of the issue of Insurer's obligation for future benefits. Conservator was present. Another attorney from the same law firm, acting as attorney for Guardian and Conservator, placed the agreement on the record. The parties agreed that the $50,063 check tendered to Insurer pursuant to the district court reimbursement order would be returned to Children and Children would also receive an additional $45,000, totaling $95,063. The issue of attorney fees was left for later resolution. The WCJ asked the

parties to prepare an order, saying nothing at the time regarding the propriety of the settlement.

{16} Before any documentation of the settlement occurred and before entry of any order approving the settlement, Conservator on October 5, 2001, sent a letter addressed to Insurer's attorney, the WCJ-mediator (Griego), and the attorney for Guardian and Conservator, recommending against approval of any lump sum settlement. Conservator stated he did not believe the proposed settlement was in the best interest of Children and that "in view of the tender age of the minor children, bi-weekly payment of compensation benefits is in the best interest of the children." In November 2001, Insurer countered with a motion to enforce the settlement. In this motion, Insurer argued that it was Conservator who made the settlement offer, Insurer accepted it, the attorney for both Conservator and Guardian placed the settlement on the record, and the WCJ approved it. The Insurer asserted that the settlement resolved the entire controversy with respect to Insurer's reimbursement and Children's entitlement to past and future benefits, and the settlement was binding and enforceable, leaving for resolution only the issue of the amount of attorney fees recoverable by Children.

{17} The WCJ heard and denied Insurer's motion to enforce the settlement. Although the WCJ found that the parties had orally agreed to a lump sum settlement which was placed of record, the WCJ found that the settlement could not be enforced. The WCJ determined that two essential requirements were absent: (1) a joint petition verified and signed by all parties, and (2) a fair and equitable settlement consistent with the WCA Act. See §§ 52–5–13, –14. The WCJ noted that "[w]hat happened here was simply that the Conservator had second thoughts about the wisdom of the settlement," and that Insurer was "understandably concerned about the withdrawal from a settlement agreement." However, the WCJ could not overlook the fact that the statutory requirements for a lump sum settlement approval were not met prior to Conservator's withdrawal of his agreement to the settlement.

{18} In March 2002, the WCJ turned to Children's pending motion asking the WCJ to take judicial notice of the district court's findings. The WCJ determined that the parties did not disagree on the content of the district court's findings and conclusions, or on its order, they only disagreed about the effect in the WCA forum of the court's findings, conclusions, and order. The WCJ entered an order on April 1, 2002, taking judicial notice of the district court's findings of fact and conclusions of law, but the WCJ stated that "at this time no determination is made with respect to the effect of [the court's] findings, conclusions and order in this forum."

{19} Children proceeded to file a motion for summary judgment, contending that the doctrine of collateral estoppel barred any further litigation of facts and issues relating to Children's entitlement to further benefits and Insurer's reimbursement because those issues were litigated and decided in the district court proceeding. Insurer opposed summary judgment asserting, as it had in the prior hearing on Children's judicial notice motion, that the district court's findings were on the sole issue of reimbursement under Section 52–5–17. In specific response to Children's contention that the court's findings as to future benefits arose from an adjudication of the issue, Insurer reiterated that the court not only verbally stated on the record that the future benefits issue was not litigated, the court entered an order expressly limiting the effect of its findings. In addition, Insurer argued that under the presumption in *Montoya*, Children were "made whole" by the third party wrongful death settlement and what Children received in that settlement constituted the entire remedy available to them.

{20} In September 2002, the WCJ granted Children's motion for summary judgment, holding that Insurer was precluded based on collateral estoppel from challenging the district court's findings of fact. The WCJ stated that "only one conclusion is possible with respect to the survivors' right to future workers' compensation benefits," namely, that because the "[t]ort damages were $2,312,372.60 and the fair and reasonable re-

covery was only $630,000[,][the] survivors were therefore not made whole and are entitled to continuing workers' compensation indemnity benefits."

{21} Further, the WCJ determined that Insurer was precluded from obtaining relief from future payments to the survivors due to "the manner in which the District Court calculated the reimbursement right." The WCJ's analysis of the district court's calculation was that, although the court should have based its reimbursement determination solely on paid benefits, the court instead "factored the future entitlement to survivors' benefits into the reimbursement right." Specifically, the WCJ determined that a district court finding "calculated the full undiscounted 700–week entitlement at $254,520.00," and that this "figure was used as the numerator and the tort damage figure for wage loss, [of] $740,021.00, was used as the denominator," making "[t]he portion of the actual tort recovery allocated to wage loss [to be] $201,600.00." It was from this $201,600 amount that Insurer's gross reimbursement amount was determined. The WCJ determined that, because no appeal was taken from these calculations, "[t]he calculations ... are the law of the case." In the WCJ's opinion, Insurer could not both obtain reimbursement for benefits not yet paid, yet be relieved of any obligation to pay those future benefits. Thus, the WCJ awarded future benefits payable pursuant to Sections 52–1–17 and 52–1–46, with no further Insurer reimbursement right.

{22} Insurer appealed this summary judgment and also the WCJ's order denying Insurer's motion to enforce settlement. Insurer asserts two points on appeal: (1) the WCJ erred in denying Insurer's motion to enforce settlement, because the settlement was binding and enforceable; and the settlement must be approved by this Court; and, in the alternative, (2) the WCJ erred in granting summary judgment in favor of Children, primarily because genuine issues of material fact existed in regard to the adequacy of the death settlement, and because further discovery was necessary for development of the facts and issues for the WCJ's independent determination of those issues. We divide the discussion into the two points raised by Insurer on appeal.

## DISCUSSION

### I. Claimed Error of WCJ in Refusing to Enforce the Settlement

#### A. Standard of Review

{23} The facts on this point are undisputed. We therefore review the issue de novo and determine whether the applicable law was correctly applied to the facts. *See Slack v. Robinson*, 2003–NMCA–083, ¶ 7, 134 N.M. 6, 71 P.3d 514 (reviewing district court's application of law to undisputed facts de novo); *State v. Esparza*, 2003–NMCA–075, ¶ 13, 133 N.M. 772, 70 P.3d 762 (stating that appellate court reviews legal issues de novo where facts are not in dispute).

#### B. The WCJ Did Not Err in Refusing to Enforce the Settlement

##### 1. The Applicable Law

{24} The decedent's maximum disability recovery under the Act is 700 weeks. § 52–1–41(C). His eligible dependents are entitled to recover compensation benefits for death. §§ 52–1–17 (defining "dependents"), –46 (providing what payments are to be made to eligible dependents). In the present case, Children are the eligible dependents, and at all relevant times Children's interests were represented by Guardian and Conservator.

{25} The Legislature set unmistakable policy regarding lump sum payments under the WCA Act: "lump-sum payments in exchange for the release of the employer from liability for future payments of compensation or medical benefits shall not be allowed" except as specifically provided in the WCA Act. § 52–5–12(A). The policy favoring periodic payments over lump sum payments applies to protect "the best interest of the injured worker or disabled employee." *Id.*

{26} Section 52–5–12 does not mention a worker who dies or that worker's dependents. The exceptions to the WCA Act's policy that permit lump sum payments refer only to the worker and contemplate a worker who is alive. § 52–5–12(B), (C), (D). Nevertheless, like a lump sum payment agreement between a living worker and his

employer, a lump sum payment agreement between a deceased worker's dependents and the worker's employer must be presented to a WCJ for approval. § 52–5–13. Therefore, we construe the Legislature's policy favoring periodic over lump sum payments in Section 52–5–12(A) to also apply to compensation due a deceased worker's dependents under Section 52–1–46.

{27} In furtherance of that policy, the WCA Act requires the dependents and employer to present a lump sum payment agreement to the WCJ through "a joint petition signed by all parties and verified by the ... dependents." § 52–5–13. The WCA Act goes even further and requires the WCJ to "assure that the ... dependents understand the terms and conditions of the proposed settlement." *Id.* In addition, the WCJ can approve the lump sum payment agreement only if the WCJ finds it "to be fair, equitable and consistent with provisions of the ... Act," and enters an order approving the agreement. § 52–5–14(A); *Cruz v. Liberty Mut. Ins. Co.,* 119 N.M. 301, 304–05, 889 P.2d 1223, 1226–27 (1995). The WCA Act also permits the WCJ to even refuse to approve "a settlement" if the WCJ "does not believe that it provides substantial justice to the parties." § 52–5–14(A).

## 2. Application of the Law

{28} The lump sum payment agreement was initially oral. It was offered by Conservator and accepted by Insurer. Guardian knew of the agreement and did not object. There exists no suggestion that Conservator and Guardian did not have an opportunity to know and consider all facts and circumstances material to the settlement. Nor is there any suggestion that the negotiations were anything but fair. Conservator's attorney read the agreement into the record in the presence of the WCJ-mediator. Afterwards, the WCJ-mediator stated: "Okay. What I will do is I will inform Judge Harmon of the resolution. Do you want to submit the order and ... paperwork to me or would you prefer to submit it to her?" The parties agreed that the order would be submitted to Judge Griego, who was the WCJ-mediator, and that he could sign as the settlement

facilitator. The WCJ-mediator responded with "all right" and "okay."

{29} We determine that this oral agreement recorded during the October 2001 settlement conference was an expression of the parties' intent to bind the parties to that agreement. *See Cruz,* 119 N.M. at 304, 889 P.2d at 1226 (holding lump sum settlement agreement that was written and signed to be a binding expression of the parties' intent); *Rojo v. Loeper Landscaping, Inc.,* 107 N.M. 407, 410, 759 P.2d 194, 197 (1988) (same); *Esquibel v. Brown Constr. Co.,* 85 N.M. 487, 490, 513 P.2d 1269, 1272 (Ct.App.1973) (holding oral agreement approved by court binding even though not reduced to writing). Children do not contend otherwise. Judge Harmon, the WCJ who decided the various motions and the merits in the WCA proceeding also determined that such an oral agreement was enforceable under prior Workers' Compensation law and case law. However, to be enforceable, the agreement had to be approved by a WCJ. *See* §§ 52–5–13, –14(A). Nothing in the record indicates that either a WCJ in the presence of whom the settlement agreement was recorded, or any other WCJ, determined that the settlement was "fair, equitable and consistent with provisions of the ... Act" pursuant to Section 52–5–14(A). Nor has any WCJ entered an order containing those findings and approving the settlement, as required under Section 52–5–14(A).

{30} Insurer argues that the WCA Act's requirements do not apply because this was not a lump sum payment as contemplated under Sections 52–5–12, –13, and –14. Insurer's reasoning is that there was no issue as to whether a lump sum payment would be permitted instead of the continuation of periodic payments. The only issue, Insurer argues, was a disputed one concerning whether Worker or his dependents were even entitled to continued benefits, i.e., whether Children had been made whole and thereby were not entitled to benefits. Insurer therefore sees the settlement as nothing more than a settlement of a disputed claim. We reject this attempt to avoid application of the WCA Act's requirements to the settlement at issue here. While the settlement appears to have been of disputed positions, it nevertheless

affected Children's potential opportunity, if not right, under the Act to receive continuing, periodic payments. We interpret Sections 52–5–12 through –14 to include this particular settlement agreement.

{31} This lump sum payment agreement was not enforceable in the absence of approval as required under the WCA Act. Approval by a WCJ in strict accordance with the requirements of Sections 52–5–13 and –14(A) is necessary to assure adherence to the policies established by the Legislature favoring periodic payments over lump sum payments, requiring careful effort to assure that a worker or the dependents understand the consequences of replacing periodic payments with a discounted lump sum amount, and assuring that the settlement is fair, equitable, and consistent with the Act. If a party wants to assure that a settlement agreement is enforceable, the party must obtain WCJ approval as clearly and expressly set out in the WCA Act. After consideration of all of the material circumstances surrounding the lump sum settlement agreement, the WCJ must enter an order that expressly states that the agreement is "fair, equitable and consistent with the provisions of the ... Act." § 52–5–14(A).

{32} We determine that the lump sum payment agreement was not enforceable because it was not approved as required under the WCA Act. The WCJ-mediator's statements at the hearing did not, as argued by Insurer in its reply brief, constitute an "implicit" approval of the payment agreement that satisfied the express statutory requirements, and even if they did, an implicit approval does not pass statutory muster. We therefore hold that the WCJ properly denied Insurer's motion to enforce the payment agreement.

{33} Insurer should have, but did not, ask Judge Harmon, the WCJ before whom the motion was heard, to approve the payment agreement. Insurer sought only to enforce an agreement that was already, in Insurer's view, properly approved. It does not appear that Judge Harmon considered whether to approve the payment agreement or to refuse to approve it. All that occurred was Insurer's argument on its motion to enforce the payment agreement on the grounds it was binding and placed of record, followed by the WCJ's decision denying the motion because it was not presented and approved as required under the WCA Act. Thus, what occurred was, at best, an unexpressed, implicit refusal of Judge Harmon to approve the payment agreement—something unacceptable under the WCA Act.

{34} Insurer's main thrust is that failure to enforce the settlement agreement undermines the strong public policy favoring settlement and the enforcement of settlement agreements. We are not without concern. There is little that can discourage settlement activity more than to permit a party to renege *at will* after an agreement is reached and voluntarily placed on the record, following fair negotiations, and when the parties have had full opportunity to know the facts necessary to make knowing, informed decisions. Were it not for the express requirements of the WCA Act, Children would be bound by their agreement. Having entered into an otherwise binding agreement, the parties were entitled to request and receive express WCJ approval or rejection as required under the WCA Act.

{35} We could treat Insurer's motion to enforce settlement as having implicitly requested the WCJ to approve or reject the agreement. However, in this Court, as it did below, Insurer insists on enforcement of an agreement it contends was already approved. Insurer does not request that we remand for approval or disapproval of the settlement agreement. We, therefore, close this issue with our holding that the agreement is not enforceable. In choosing not to complete the process through a remand for approval or rejection of the agreement, we want to make it clear that we in no way condone the WCJ's failure to hold a hearing on Children's request that the agreement they made not be approved and the failure to make the express determinations required under the WCA Act.

{36} Because we hold that the agreement is not enforceable for lack of WCJ approval, we need not address or decide whether the circumstances leading up to the point the agreement awaited WCJ approval constituted compliance with the requirement in Sec-

tion 52–5–13 of "a joint petition signed by all parties and verified by the worker or his dependents."

## II. Claimed Error of WCJ in Granting Summary Judgment in Favor of Children

### A. Standard of Review

{37} In reviewing a grant of summary judgment based on the nonmoving party's contention on appeal that genuine issues of material fact exist, we consider the whole record for any evidence that puts a material fact at issue. *Roth v. Thompson*, 113 N.M. 331, 334–35, 825 P.2d 1241, 1244–45 (1992). If no genuine issue of material fact exists that would preclude judgment as a matter of law, we review legal questions de novo. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### B. Insurer's Point

{38} Insurer's point on appeal is that summary judgment should have been denied based on the existence of disputed material facts and based on its not having sufficient factual discovery on and development of the issues. We understand Insurer's basic contention to be that the evidentiary facts underlying the ultimate issues of fact found by the district court were disputed by the parties, and further, that it was up to the WCJ to independently make those ultimate findings after further discovery in the WCA proceeding. Insurer did not appeal the district court's judgment, and cannot complain about the court's findings of fact and conclusions of law. Insurer's contentions succeed or fail based on whether the court's factual determinations were off limits to the WCJ. Insurer's argument centers not on factual issues, but on the WCJ's application of collateral estoppel. This is a legal issue, not a factual issue. Because we hold that the WCJ properly employed collateral estoppel, no genuine issues of material fact exist as to the award of future benefits, and no discovery or development of further facts was necessary before the WCJ awarded benefits.

## C. The Underlying Problem Elucidated

{39} The underlying problem in attempting to find the real issue is the lack of clarity of jurisdiction and also of what the district court was adjudicating and deciding. In addressing Insurer's *reimbursement*, the district court took on an issue that likely should have involved, but did not involve, contemporary analyses of (1) the extent of *reimbursement* to which an employer/insurer is entitled from a third-party tortfeasor settlement for compensation and other *benefits already paid* by the employer/insurer to a worker, and (2) whether a worker is made financially whole by the settlement funds and, if not, the extent to which the worker is entitled to further periodic compensation and other benefits and the extent to which the employer/insurer may be entitled to *reimbursement* from the settlement as a credit *against such future periodic payments* of compensation and other benefits. In the present case, however, the district court appears to have been itself unclear as to its jurisdiction, the scope of what it was to determine, assuming it had jurisdiction, and the manner in which reimbursement from a third-party settlement would be awarded when an employer/insurer is still obligated for future benefits.

{40} It appears the court intended, at the very least, to leave to the WCA the legal determination of whether Children were entitled to future benefits and, if so, what those benefits should be. The district court proceedings left us with unanswered questions. Did the court enter findings of fact so as to permit conclusions to be drawn regarding future benefits, but decline the next step of drawing the conclusions, thinking that only the WCJ had jurisdiction to do so? Or, did the court intend its findings of fact to be so limited in purpose and effect as to be unavailable to the WCJ under the collateral estoppel doctrine? Last, did the court award Insurer reimbursement for both paid and future benefits, intending to foreclose Insurer from any further reimbursement even though Insurer may be obligated for future benefits?

{41} Insurer does not contend on appeal that the district court lacked jurisdiction to decide what it did or to enter the findings of fact and conclusions of law that it entered.

Nor does Insurer contend on appeal that the WCA has exclusive jurisdiction to decide whether Children are entitled to future benefits and what those benefits should be. *See* § 52–1–6(E) (stating that the Act "provides exclusive remedies" and that no cause of action outside the WCA shall be brought by a dependent or an insurer "for any matter relating to the occurrence of or payment for any injury or death covered by the ... Act"). Further, the parties do not raise on appeal whether the district court had jurisdiction to actually award future benefits to Children under the Act or actually awarded such benefits. We have not been invited to raise and address these jurisdictional issues sua sponte, and we choose not to do so.[1]

{42} The district court in the present case saw jurisdictional problems and apparently attempted to back away from them after entering its findings and conclusions by placing in its order limiting language. The WCJ did not independently evaluate the facts that necessarily were material to the issue whether Children are entitled to future benefits, what future benefit obligation Insurer has, if any, and to what reimbursement, if any, from the third party settlement, Insurer would be entitled from future payments it was required to make. Given that the district court exercised jurisdiction it believed it had, the issues are (1) whether factual issues were adjudicated in the district court action and, if so, whether the findings are binding on the parties in the WCA action, permitting the WCJ to proceed, based on those findings, to determine the legal question whether Children are entitled to future benefits and to award the benefits; or rather (2) whether the WCJ was required, under the Act, to separately and independently consider and determine the facts and make separate, independent findings of fact before concluding whether Children are entitled to future benefits, thus precluding the application of collateral estoppel even if the doctrine were other-

wise applicable. In this case, the WCJ took judicial notice of the findings of the district court and then held that the findings were binding on the parties under the doctrine of collateral estoppel.

### D. The District Court's Findings

#### 1. Findings Relating to Wrongful Death Settlement

{43} The district court set out several findings that appear intended to relate primarily or solely to the settlement of the wrongful death action. Among them were findings of the decedent's 1996–97 wages; his life and work-life expectancies; present cash value of future wage loss, totaling $740,021; present cash value of lost household services and loss of guidance and counseling; medical and funeral expenses; value of loss of life; and total damages of $2,312,372.60 resulting from wrongful death. The wrongful death action resulted in a settlement of all claims for $630,000, of which, after deducting attorney fees and costs, $384,867.51 was paid for the benefit of Children. The court found the settlement to be "fair and reasonable under all attendant circumstances, including, but not limited to, issues of proof of liability reasonably and prudently considered by Plaintiff's counsel in settling the matter."

#### 2. Findings Relating to Insurer Reimbursement

{44} The court also set out findings that appear to relate solely to the reimbursement issue, although some of the court's findings relating to the wrongful death settlement were also used in connection with the court's findings relating to Insurer reimbursement. Insurer paid 180 weeks of 700 payable weeks of compensation benefits, totaling $65,449.20, and paid medical and funeral expenses of $32,747.60. Insurer's obligation was to pay $254,520 as compensation benefits for lost wages, which was 34.4% of the total wage

1. The issue of jurisdiction of the district court to order reimbursement of paid benefits from a third party settlement, to adjudicate entitlement to future benefits, and to award such benefits from a third party settlement, are, and remain open issues in New Mexico. Cases in other states have addressed jurisdiction, coming down on both sides. *See, e.g., Hughes v. Argonaut Ins. Co.,* 88 Cal.App.4th 517, 105 Cal.Rptr.2d 877, 883 (2001); *Shirley v. Pothast,* 508 N.W.2d 712, 714–17 (Iowa 1993); *Nunez v. Loomis Fargo & Co.,* 807 So.2d 1063, 1070 (La.Ct.App.2002); *Henning v. Wineman,* 306 N.W.2d 550, 553 (Minn.1981).

loss of $740,021. Of the settlement amount of $630,000, 32%, or $201,600 was allocated to wage loss, entitling Insurer to a gross recovery of $69,350, which represented 34.4% of the $201,600 wage loss allocation. Based on a 38.91% cost of recovery incurred by Plaintiff and applying Insurer's pro rata share of that cost of recovery, Insurer was entitled to recover $42,366 for the wage loss compensation that it paid. The medical and funeral expenses of $32,747.60 represented 2% of the total damages figure and that equated to $12,600, entitling Insurer to recover $7,697 after deduction of its pro rata share of the cost of recovery. Adding the two recoveries of $42,366 and $7,697, the court entered a conclusion of law that Insurer was entitled to reimbursement of $50,063 to be paid by Conservator.[2]

{45} As indicated earlier in this opinion, the court's order also stated that:

[t]he sole issue before the Court was the amount of reimbursement under § 52-5-17 to be paid by the Conservator to [Insurer] for benefits from the Third Party death settlement. No finding or conclusion entered herein shall affect the rights of any party on other issues pertaining to Workers' Compensation benefits.

The court simultaneously rejected Children's proposed order requiring Insurer to pay future periodic benefits, stating, with respect to the express award of future benefits:

THE COURT: Here's my problem: I didn't litigate that. We didn't litigate that. That issue wasn't litigated.

MR. DUHIGG: I think it was not litigated because it was admitted. In other words, there was nothing—

THE COURT: Well, nobody tendered a finding or request or anything like that. That's my problem with entering an order on something that nobody—I mean, maybe it's implied, but isn't that more appropriate for the comp administration to enter?

Children's counsel proceeded to explain further why Children's proposed order was appropriate, following which, the court stated:

THE COURT: Okay. All right. Well, I disagree with you, and I think Mr. Civerolo is right, because there may be something—you are not foreclosed, particularly under his form of order. The workmen's comp administration has exclusive jurisdiction, I believe, to determine how much the remaining amounts are owed.

The sole issue that was presented to me—maybe implicitly you are right, but maybe it was not explicit. I am uncomfortable signing an order based on findings as a result of what transpired in our courtroom, but that's not—there was no finding, no requested findings, no conclusions to that effect.

Mr. Civerolo's form of order indicates accurately that the Court has ordered reimbursement of [$]50,000, that each party should bear their own fees and costs, and that there shall be no finding or conclusion entered herein to affect the rights of any party on other issues pertaining to workmen's compensation benefits, thereby preserving both yours and his client's rights to duke it out, if you will, in the comp administration.

Perhaps it's a procedural matter that could have been taken care of earlier. I'm not sure that it can be, because I don't think this Court has jurisdiction to make the kinds of determinations that you're asking me to. Okay?

### 3. The WCJ's Treatment of the District Court's Findings

{46} When the issue of what was adjudicated in the district court reached the WCJ on Children's motion for summary judgment, the WCJ viewed the critical factual issues to have already been necessarily adjudicated in the district court. The WCJ analyzed the

**2.** The constituent parts of the $2,312,372.60 total damages figure broke down into the following percentages:

| | | |
|---|---|---|
| Medical and funeral expenses | $ 32,747.60 | 2.0% |
| Lost Wages | 740,021.00 | 32.0% |
| Household Services | 257,039.00 | 11.0% |
| Lost Guidance/Counseling | 282,565.00 | 12.0% |
| Lost Value of Life | 1,000,000.00 | 43.0% |

four elements of collateral estoppel, citing *Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988). The WCJ determined that the parties were the same, the subject matter was different, the district court conducted a trial on the merits, the parties litigated, and the court determined critical factual issues.

{47} In particular regard to the two requirements, namely, "the ultimate facts or issues were actually litigated," and "the issue was necessarily determined," *id.*, the WCJ stated:

> The District Court conducted a trial on the merits. Under *Gutierrez* ... the parties had to litigate and the District Court had to determine the total amount of the tort damages and whether the tort recovery was fair and reasonable. In Finding of Fact 18[,] the District Court found: "Plaintiff's damages incurred as a direct and proximate result of the wrongful death of its Decedent are $2,312,372.60." In Finding of Fact 19, the District Court found: "The settlement reached between Plaintiffs and the third-party tortfeasors ... was fair and reasonable under all attendant circumstances, including, but not limited to, issues of proof of liability reasonably and prudently considered by Plaintiff's counsel in settling the matter."
>
> Based on the District Court's Findings of Fact, which are given preclusive effect, only one conclusion is possible with respect to [Children's] right to future workers' compensation benefits. Tort damages were $2,312,372.60 and the fair and reasonable recovery was only $630,000.00. [Children] were therefore not made whole and [Children] are entitled to continuing workers' compensation indemnity benefits.

The WCJ gave preclusive effect to the findings and granted Children's motion for summary judgment holding that Children were entitled to continuing compensation benefits.

{48} In addition, the WCJ concluded that Insurer was precluded from obtaining any further relief in regard to reimbursement because of the manner in which the district court calculated Insurer's reimbursement right. Quoting *Lozano v. GTE Lenkurt, Inc.*, 1996–NMCA–074, ¶ 34, 122 N.M. 103, 920 P.2d 1057, the WCJ determined that "[u]nder the applicable case law, the District Court should have based the reimbursement right solely on paid benefits," because "[a]ny potential right to relief from payment of future benefits should have been addressed separately [due to the fact that] [t]he 'right to reimbursement arises only after payment of compensation and should not precede compensation.'  " However, according to the WCJ, the district court "factored the future entitlement to survivors' benefits into the reimbursement right" when the court "calculated the full undiscounted 700–week entitlement at $254,520[,]" used that amount as the numerator and the tort damage wage loss figure of $740,021 as the denominator, with a resulting $201,600 as the portion of actual tort recovery allocated to wage loss, and allowed recovery before deduction for pro rata cost of litigation, of 34.4% of that amount, or $69,350. The WCJ calculated Insurer's reimbursement right for wage loss before deduction for pro rata cost of litigation, stating that if the court had considered only paid benefits, the benefits would have been 8.8% of $201,600, or $17,740.80. Thus, the WCJ concluded, Insurer "wants to be reimbursed for future benefits that have not yet been paid[,]" yet, "[a]t the same time, ... wants to be relieved of any obligation to pay those future benefits." According to the WCJ, "Insurer cannot have it both ways."

### E. The Significance of *Montoya* and *Gutierrez*

{49} In *Montoya*, the employer was paying temporary total disability benefits to the worker when the worker sued the third party tortfeasor and settled that action for $7,500. *Montoya*, 114 N.M. at 355, 838 P.2d at 972. Following dismissal of the tort action based on the settlement, the employer ceased paying compensation. *Id.* The worker then filed a claim to reinstate the benefits. *Id.* The WCJ granted the employer summary judgment on the basis of existing case precedent ruling that "when the worker collects in full a judgment from a third-party tortfeasor in an amount that is less than the maximum the worker would have been entitled to receive under the Act, the worker is barred from

subsequently recovering workers' compensation." *Id.* at 356, 838 P.2d at 973. The rationale underlying the case precedent was the concern about "the purported double recovery that would arise should the [worker] be permitted to receive compensation," that is, recovery by the worker for the full loss suffered, making him financially whole, and also receipt of subsequent compensation. *Id.*

{50} The Supreme Court, in *Montoya,* reversed the denial of benefits to the worker by the WCJ. *Id.* at 354, 838 P.2d at 971. Under the view that the broader objective of Section 52–5–17 was "to achieve an equitable distribution of the risk of loss," *id.* at 357, 838 P.2d at 974, the Court overruled precedent that had created "the fiction that a worker has been made financially whole when the worker has received less than the compensation and related benefits to which [the worker was] entitled under the Act." *Id.* at 358, 838 P.2d at 975. The Court stated that "[i]f there is a problem with a satisfaction of a third-party claim, it does not go to double recovery. Rather, it goes to the amount of reimbursement or credit to which the employer is entitled." *Id.* at 358, 838 P.2d at 975. The Court further stated that the worker could show that a compromise settlement did not discharge fully the employer's liability to pay benefits, and that "if the worker has dealt with the third party in good faith and at arm's length, then the net amount paid presumptively would be the amount by which the employer's liability is reduced." *Id.; see also Gutierrez,* 1998–NMSC–027, ¶ 14, 125 N.M. 643, 964 P.2d 807 (interpreting this language in *Montoya* to require the WCJ, in making an equitable allocation of settlement proceeds, to "start from the presumption that the employer is entitled to full reimbursement"). The Court concluded with the statement:

If fairness of the amount is contested, the [WCJ] must hold a hearing to determine whether the amount paid to satisfy the third-party claim comports with the proportionate fault of the third party and with a reasonable compromise of the liability of that party. In such a contest, it is for the [WCJ] to decide the employer's right to reimbursement and credit, if any, against

liability for future compensation and related benefits.

*Montoya,* 114 N.M. at 358, 838 P.2d at 975.

{51} In *Gutierrez,* the Supreme Court revisited Section 52–5–17 and *Montoya. Gutierrez,* 1998–NMSC–027, ¶ 1, 125 N.M. 643, 964 P.2d 807. The Court stated *Montoya's* holding to be "that Section 52–5–17 allows an injured worker to pursue a third-party tort claim and also receive compensation benefits for the same injury, subject to an employer's right of reimbursement depending on the relative success of the tort claim." *Id. Gutierrez* refined this *Montoya* holding by limiting the amount of reimbursement to which an employer is entitled to "that portion of the settlement proceeds which duplicates compensation benefits paid under the Act." *Id.*

{52} *Gutierrez* created a formula for the WCJ to use in performing the judge's duty to "equitably allocate the proceeds." *Id.* ¶ 7. The broad statement of the formula was that:

[T]he employer's extent of reimbursement for compensation paid is determined by identifying the nature and purpose of the payments made by the employer, and comparing the elements of the tort recovery with those which are duplicative of the employer's compensation payments. The total of the duplicative payments is the amount which must be reimbursed.

*Id.* ¶ 8. The Court's rationale for use of this formula was that "[a] windfall [to the employee] occurs only to the extent that the tort recovery duplicates the elements of damage covered by compensation benefits." *Id.* ¶ 10. Because a worker's "fair but partial tort recovery" may not duplicate compensation benefits, the WCJ must "analyze and compare the worker's two recoveries in order to determine the extent of duplication, and thus determine the extent of the employer's reimbursement." *Id.* ¶ 13.

{53} *Gutierrez* set out a specific formula. The first determination is the amount of damages needed to make the plaintiff in the tort action whole, broken down into each separate element of damage, with a comparison then of each of these elements to the elements of workers' compensation benefits received by the worker in his WCA proceeding. *Id.* ¶¶ 15–16. Through this comparison,

the WCJ in *Gutierrez* was to determine, with respect to each separate duplicate element, whether the compensation payments covered the entire damage amount. If not, a determination was to be made as to what percentage the payments covered the damage amount, as to each separate duplicate element. The employer then can be reimbursed that percentage of the damage amount attributed to the duplicate elements. Of course, where there exists no duplication, as when tort recovery is for the element of pain and suffering for which there exists no duplicate element under the Act, the employer gets no reimbursement. *Id.* ¶¶ 17– 19. The employer's reimbursement is reduced further based on its pro rata share of attorney fees and costs. *Id.* ¶ 19. In this manner, the Court held, "an employer is entitled to recoup the amount of a worker's duplicative recovery." *Id.* ¶ 28.

### 1. Insurer's Reliance on *Montoya*

{54} Insurer argued in district court that under *Montoya*, "if a third-party recovery is contested, it is the WCJ who must hold a hearing to determine (1) whether the amount paid is proportionate to the fault of the third-party and therefore, a reasonable compromise of liability, and (2) whether the Estate has been made whole and [Insurer's] right to reimbursement and credit for future compensation-related benefits has been protected."

{55} Insurer contends on appeal that, because of the legal presumption created in *Montoya* that the worker is made whole by virtue of a settlement, and because this presumption was not litigated or overcome in the district court action but, rather, is at issue in the WCA action, the application of collateral estoppel was improper.

{56} Children pay little attention to *Montoya*. They argue in a footnote that *Montoya's* rejection of the fiction of financial wholeness and statement that any problem with satisfaction of a third party claim does not go to double recovery but to the amount of reimbursement, and *Gutierrez's* formula for determining the amount of reimbursement, have eliminated any presumption that a worker is made whole by a third party settlement.

### 2. Children's Reliance on *Gutierrez*

{57} In their answer brief on appeal, Children contend that the district court actually applied the *Gutierrez* reimbursement formula when it determined that Insurer was entitled to $50,063. Children reach this conclusion based on the court's analysis of each element of damages, as shown in the court's findings. Children assert that "[t]he issue as to whether [Children] are entitled to future benefits was[,] if not explicitly, implicitly litigated by the District Court in its calculation of [Insurer's] right of reimbursement utilizing the *Gutierrez* formula."

{58} In its brief in chief and reply brief on appeal, Insurer does not mention *Gutierrez*, or discuss whether the district court applied or necessarily had to have applied the *Gutierrez* formula. Insurer ignores *Gutierrez* despite the facts that the court obviously followed the *Gutierrez* formula, the WCJ relied on *Gutierrez* in her analysis, and Children relied on *Gutierrez* in their argument on appeal. We treat Insurer's silence as a concession by Insurer that the court applied the *Gutierrez* formula.

### F. The WCJ Did Not Err in Granting Summary Judgment for Children

{59} Insurer attacks the WCJ's legal determinations on the ground that she had to reach the determinations through independent evaluation of the facts, not by invoking collateral estoppel thereby adopting the district court's findings. Insurer does not attack the WCJ's determinations as being legally erroneous. Therefore, if the WCJ correctly invoked collateral estoppel, Insurer's appellate position cannot succeed. We hold it is unpersuasive and cannot succeed.

{60} The court's *Gutierrez* analysis, factual findings, and legal determinations as to past and future reimbursement permitted the WCJ to invoke collateral estoppel to bar Insurer from requiring the WCJ to adjudicate the issues that were already and necessarily adjudicated by the district court. Furthermore, the WCJ's unattacked legal determination that Children were not made whole permitted the additional determination

that Children were entitled to recover the remainder of compensation due under the 700–week allowance.

{61} The issue regarding Children's claim to future compensation benefits was raised and discussed during the district court proceedings. The parties were well aware of that issue. They could and should have anticipated that the issue would be decided either by the court or the WCJ. Insurer could and should have anticipated that the district court's findings of fact might be employed to resolve the issue whether Children were made whole under *Montoya* and *Gutierrez*, and the issue whether Children had a right to further benefits. Although Insurer might have reasonably believed that the court's statements regarding its findings would protect Insurer in the WCA proceeding, the findings were made, and they were made in connection with the closely related issue of Insurer's reimbursement right and amount. We do not think that Insurer's intention and belief, even considering the district court's unclear expression of its in-

tent, are sufficient to have precluded the WCJ, under the circumstances in this case, from taking judicial notice of the findings and then adopting them as findings in the WCA proceeding under the collateral estoppel doctrine.

## CONCLUSION

{62} We affirm the orders of the WCJ denying Insurer's motion to enforce the settlement agreement and granting summary judgment in favor of Children.

{63} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and MICHAEL E. VIGIL, Judge.