This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STAN C. LUCERO,**

Worker-Appellee,

v.                                                    **NO. 31,096**

**FIRST FLEET and FIDELITY &
GUARANTEE INSURANCE COMPANY,**

Employer/Insurer-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Terry Kramer, Workers' Compensation Judge**

Dunn Law Offices
Rod Dunn
Rio Rancho, NM

for Appellee

Hale & Dixon, P.C.
Timothy S. Hale
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

First Fleet (Employer) and Fidelity & Guarantee Insurance Company (Insurer) appeal from orders of the Workers' Compensation Administration (WCA) denying their motion to set aside a settlement agreement, granting the motion of Stan Lucero (Worker) to enforce a settlement agreement, and approving the lump-sum settlement agreement (the Agreement). Employer/Insurer contend that the Agreement was an unenforceable lump-sum agreement because it failed to comply with the requirements in NMSA 1978, Section 52-5-12(D) (2003) (amended 2009) of the Workers' Compensation Administration Act, NMSA 1978, §§ 52-5-1 to -22 (1986, as amended through 2009) (the Act). We do not agree that the current version of Section 52-5-12(D) applies to this case. Because the Workers' Compensation Judge (WCJ) did not have the authority to approve the Agreement under the Act prior to its 2009 amendments, we reverse the WCA's order approving the Agreement.

**FACTUAL AND PROCEDURAL BACKGROUND**

Worker was injured on the job when he fell off of a semi-truck he was driving for Employer on August 23, 2007. On July 8, 2009, Worker filed his first complaint with the WCA seeking medical and indemnity benefits. The parties disagreed as to whether Worker's left shoulder injury was causally related to the work accident. Worker and Employer/Insurer entered into settlement negotiations regarding Worker's entitlement to medical benefits and indemnity payments.

Between December 15 and 17, 2010, counsel for Worker and Employer/Insurer exchanged e-mail messages regarding a potential settlement offer. On December 16, 2010, Employer/Insurer offered a lump-sum payment of $100,000, payment of the medical costs associated with Worker's upcoming shoulder surgery, and payment of attorney fees. Employer/Insurer informed Worker's counsel that any offer would be withdrawn at 4:00 p.m. on December 17, 2010. On December 17, 2010, Worker's counsel informed Employer/Insurer's counsel that he would respond by telephone before the deadline.

Worker's counsel telephoned Employer/Insurer's counsel before 4:00 p.m. on December 17, 2010, accepting the offer. Shortly before, or concurrent with, that telephone call, Employer's representative received photographs of Worker that appeared to call into question the extent of Worker's disability. Employer/Insurer sought to withdraw the offer based upon these pictures. Later that day, counsel for Employer/Insurer sent an e-mail message to Worker's counsel attempting to withdraw the offer.

On December 20, 2010, the parties appeared before the WCJ for a status conference, and the parties informed the WCJ as to their disagreement regarding whether they had entered into an enforceable settlement agreement. The WCJ took testimony on the terms of the offer and the parties' negotiations and granted Worker's

motion to enforce the Agreement, finding that there had been an offer and an acceptance prior to withdrawal of the offer. The WCJ also granted Employer/Insurer leave to file a motion to set aside the Agreement.

Employer/Insurer filed their motion later that same day. In the motion, Employer/Insurer acknowledged that the parties had been engaged in settlement negotiations, but claimed that Employer's representative sought to terminate the negotiations and withdraw any offer based upon the newly discovered evidence and information. In response, Worker claimed that there was no new evidence showing fraud or misrepresentation on his part.

The WCJ conducted a second hearing on December 20, 2010, to consider Employer/Insurer's motion to set aside the Agreement. After taking evidence on Employer/Insurer's allegations of fraud and misrepresentation, the WCJ denied Employer/Insurer's motion and set a hearing for the following morning to determine whether the Agreement should be approved.

At the hearing on December 21, 2010, additional testimony was introduced regarding Employer/Insurer's allegations of fraud. Testimony was then introduced as to the offer and acceptance and the terms of the Agreement. After again finding that there was an offer and acceptance, the WCJ found that the Agreement fit within Section 52-5-12(D), but stated that, to be safe, he would take testimony from Worker.

Worker testified as to the details of the Agreement, including his understanding that, in exchange for the lump-sum payment and payment for his shoulder surgery, he would forgo trial and forgo any claim to later medical benefits, even if his condition required additional treatment at a later point. He acknowledged that Employer/Insurer would be reimbursed for the medical payments from any settlement Worker received in a personal injury suit that Worker had filed on May 5, 2010, against the maker of the semi-truck.

The WCJ determined that Worker understood the terms of the Agreement, he entered the Agreement willingly with an awareness of the consequences, and the Agreement was fair and equitable under the circumstances and did justice. The WCJ then entered an order approving the Agreement after finding it to be fair and equitable and consistent with the provisions of the Act. Employer/Insurer appeal from this decision.

**COMPLIANCE WITH SECTION 52-5-12(D) (2003)**

Employer/Insurer argue that the WCA erred by granting Worker's motions to approve and enforce the Agreement because no written agreement was entered into, mutually agreed upon and executed by Worker and Employer, or presented to the WCA for approval in a joint petition, as required by Sections 52-5-12(D)(1)-(4) and 52-5-13 of the Act. In general, we apply a whole record standard of review when

considering an appeal from a judgment of the WCA. *See Sanchez v. Zanio's Foods, Inc.*, 2005-NMCA-134, ¶ 9, 138 N.M. 555, 123 P.3d 788. As we are being asked to interpret and apply a statutory provision and to consider whether the law was correctly applied to the facts, our review is de novo. *See Wegner v. Hair Prods. of Tex.*, 2005-NMCA-043, ¶ 7, 137 N.M. 328, 110 P.3d 544 ("Interpreting a statute is a question of law; therefore, our review is de novo."); *Paradiso v. Tipps Equip.*, 2004-NMCA-009, ¶ 23, 134 N.M. 814, 82 P.3d 985. Moreover, we look to the law as it existed at the time of Worker's injury in 2007. *See Wegner*, 2005-NMCA-043, ¶¶ 8, 17 (recognizing the general rule that, unless there is express statutory language indicating otherwise, any revisions or amendments to the Act only apply to causes of action that accrue after the effective date of the amendment or revision, and also recognizing that a cause of action accrues on the date of injury).

Lump-sum payments are disfavored in workers' compensation cases because "it is in the best interest of the injured worker or disabled employee that he receive benefit payments on a periodic basis." Section 52-5-12(A) (2003); *see Sommerville v. Sw. Firebird*, 2008-NMSC-034, ¶ 6, 144 N.M. 396, 188 P.3d 1147 (recognizing that "[t]he Act's express policy is that it is in an injured worker's best interest to receive workers' compensation benefits on a periodic basis, rather than in a lump sum"). Section 52-5-12(A) (2003) of the Act specifically prohibits lump-sum payment of

6

benefits "[e]xcept as provided in . . . this section[.]" The exceptions to the prohibition against lump-sum payments are set forth in the remaining portions of Section 52-5-12. *See Sommerville*, 2008-NMSC-034, ¶ 6 (acknowledging that "with the approval of a WCJ, [a worker may] elect to receive a lump[-]sum payment under [the] specified circumstances" set forth in Section 52-5-12(B) and (C)); *Cabazos v. Calloway Constr.*, 118 N.M. 198, 200-01, 879 P.2d 1217, 1219-20 (Ct. App. 1994) (interpreting Section 52-5-12(A) as a declaration "that lump-sum payments of benefits are against legislative policy except to the extent that they are *specifically authorized* in Subsections B, C, and D" (emphasis added)).

At the time Worker was injured on August 23, 2007, the only exceptions to the prohibition against lump-sum payments were those set forth in Subsections B and C of Section 52-5-12. *See* § 52-5-12(B) (allowing a worker who has returned to work for at least six months and who is earning at least eighty percent of his pre-injury wage to elect to receive benefits paid in a lump sum "[w]ith the approval of the [WCJ]"); § 52-5-12(C) (2003) (allowing a worker who had attained maximum medical improvement to elect to receive a partial lump-sum payment of compensation benefits "for the sole purpose of paying debts that may have accumulated during the course of the injured or disabled worker's disability" and "with the approval of the [WCJ]"). Subsection D did not authorize lump-sum payments, but instead it merely

7

provided protection for an employer if the insurer had made unauthorized lump-sum payments. *See* § 52-5-12(D) (2003) (providing in part that "[i]f an insurer pays a lump-sum payment to an injured or disabled worker without the approval of [the WCJ]" the insurer, not the employer, will be liable if it is determined at a later point that additional benefits are due); *cf. Cabazos*, 118 N.M. at 201, 879 P.2d at 1220 (stating that "Subsection D protects the employer when its insurer makes an unauthorized lump-sum payment to the worker").

In 2009, Section 52-5-12(D) was amended. It now allows parties to elect a lump-sum settlement agreement if the agreement is in writing, mutually agreed upon, executed by both parties, and approved by the WCJ, and the agreement is in compliance with the requirements of Sections 52-5-13 and 52-5-14. *See* § 52-5-12(D). However, those amendments do not apply in this case because Worker was injured in 2007. *See Wegner*, 2005-NMCA-043, ¶¶ 8, 17.

As Worker does not qualify for lump-sum payments under either Subsection B or C, and the version of Subsection D applicable in 2007 did not authorize lump-sum payments, the WCJ was without authority to approve the Agreement because it includes an impermissible lump-sum payment. *See* § 52-5-12(A) (2003); *Rodriguez v. Scotts Landscaping,* 2008-NMCA-046, ¶¶ 9-24, 143 N.M. 726, 181 P.3d 718 (affirming the conclusion of the WCJ that a worker may not receive a lump-sum

payment of workers' compensation benefits except as specifically authorized by Section 52-5-12(B) and (C) (2003), and holding that the restriction on lump-sum payments did not violate a worker's right to equal protection); *Carrasco v. Phelps Dodge/Chino Mines*, 119 N.M. 347, 349, 890 P.2d 408, 410 (Ct. App. 1995) (recognizing that Section 52-5-12 "reflects a legislative intent to avoid lump-sum payments except in exceptional circumstances"); *Cabazos*, 118 N.M. at 200-01, 879 P.2d at 1219-20. Thus, the Agreement is not enforceable pursuant to the clear language of Section 52-5-12(A) (2003).

**COMPLIANCE WITH SECTIONS 52-5-13 AND 52-5-14**

The Agreement is also unenforceable because it fails to comply with either Section 52-5-13 or Section 52-5-14 of the Act. Section 52-5-13 provides that "[t]he lump[-]sum payment agreement entered into between the worker . . . and the employer shall be presented to the [WCJ] for approval upon a *joint petition* signed by all parties and verified by the worker or his dependents." (Emphasis added.) It is undisputed that by the time the Agreement was presented to the WCJ on December 20, 2010, Employer had withdrawn its approval because of its receipt of certain photographs of Worker. Thus, no "joint petition" was ever presented to the WCJ or introduced into the record. *See* § 52-5-13.

Worker contends that the requirement that the parties present "a joint petition

signed by the parties" to the WCJ does not mean that the petition must be in writing, and to the extent a writing is required, the e-mail exchange between the parties should suffice. We disagree because substantial compliance is insufficient. *See Sommerville*, 2008-NMSC-034, ¶ 9 ("Lump[-]sum agreements that do not follow the express requirements of the Act are not enforceable."). Moreover, we disagree that the holding in *Sommerville* is distinguishable merely because the worker in that case did not have counsel or because in that case the failure to comply with the Act was due to the WCJ's failure to conduct a hearing, not because the agreement was unwritten. We are bound by our Supreme Court's holding in *Sommerville* that strict compliance with the requirements of the Act is required in light of the policy of the Act that disfavors lump-sum payments. *See id.* ¶¶ 7, 9; *cf. Paradiso*, 2004-NMCA-009, ¶ 34 (refusing to enforce the settlement agreement based upon the failure to follow the express requirements of the Act even though it allowed "a party to renege *at will*" after full and fair negotiations and after an agreement had been reached).

Worker also claims that this Court's decision in *Paradiso* suggests that an oral agreement may be sufficient because in that case the agreement was set aside due to the parties' failure to submit it to the WCJ for approval, not because the agreement was unwritten. *See Paradiso*, 2004-NMCA-009, ¶ 36. We disagree and are unpersuaded that merely because the Court declined to consider whether an oral

10

agreement could ever constitute a petition for purposes of Section 52-5-13, it determined that such an oral agreement could be sufficient. *See Paradiso*, 2004-NMCA-009, ¶ 36 (declining to consider whether the oral agreement and circumstances leading up to that agreement were sufficient to constitute compliance with Section 52-5-13's requirement of "a joint petition signed by all parties" in light of the Court's holding that the agreement was otherwise not enforceable due to lack of approval by the WCJ); *cf. Fernandez v. Farmers Ins. Co. of Ariz.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (recognizing "[t]he general rule . . . that cases are not authority for propositions not considered" (internal quotation marks and citation omitted)).

Finally, the Agreement fails to comply with Section 52-5-14. *See* § 52-5-14(A) (providing in part that, if the WCJ "finds the lump-sum payment agreement to be fair, equitable and consistent with [the] provisions of the [Act], he shall approve the agreement by order"). As previously stated, the Agreement is prohibited based on the clear language of Section 52-5-12(A) (2003). Thus, it fails to comply with Section 52-5-14(A) because it is not "consistent with [the] provisions of the . . . Act." *Cf. Sommerville*, 2008-NMSC-034, ¶ 9 (recognizing that "[l]ump[-]sum agreements that do not follow the express requirements of the Act are not enforceable").

In conclusion, even though the WCJ found that there was an offer and

11

acceptance, and even though he found that the Agreement was fair and just, Section 52-5-12(A) (2003) prohibits lump-sum payments absent certain limited exceptions. The Agreement in this case does not constitute a recognized exception. Furthermore, the Act has additional requirements set forth in Sections 52-5-13 and 52-5-14 that must be fulfilled before a lump-sum payment may be approved and enforced. In this case, those additional requirements were not fulfilled. Thus, the WCJ erred in approving the Agreement because it fails to satisfy the requirements of Sections 52-5-12 (2003), 52-5-13 and 52-5-14.

**COMPLIANCE WITH SECTION 52-5-12(D) (2009)**

Even though the 2009 revisions to Section 52-5-12 are not applicable in this case, review of the parties' briefs and the proceedings below indicates that Worker and Employer/Insurer consider this case to be governed by Section 52-5-12 as revised effective July 1, 2009. While we disagree, we also note that application of the revised statute would not change the result in this case because the Agreement also fails to comply with the requirements set forth in revised Section 52-5-12(D). Section 52-5-12(D) as revised provides in part that:

> The worker and employer may elect to resolve a claim for injury with a lump-sum payment to the worker [and] [t]he proposed lump-sum payment agreement shall be presented to the workers' compensation judge for approval, and a hearing shall be held on the record. The workers' compensation judge shall approve the lump-sum payment agreement if the judge finds that:

12

(1) *a written agreement* describing the nature of the proposed settlement *has been mutually agreed upon and executed by the worker and the employer*;

(2) the worker has been fully informed and understands the terms, conditions and consequences of the proposed settlement;

(3) the lump-sum payment agreement is fair, equitable and provides substantial justice to the worker and employer; and

(4) the lump-sum payment agreement complies with the requirements for approval set forth in Sections 52-5-13 and 52-5-14[.]

(Emphasis added.)

It is undisputed that the Agreement consists of e-mail messages between the parties and Worker's oral acceptance of the offer. Thus, no written agreement was "mutually agreed upon" or "executed" by the parties. *See* § 52-5-12(D)(1).

Worker contends that the Agreement is enforceable despite the language in Section 52-5-12(D)(1) requiring such agreements to be in writing. He claims that the WCJ must approve an agreement that satisfies the requirements set forth in Section 52-5-12(D)(1)-(4), but the WCJ has the discretion to approve other, non-complying, lump-sum payments after a hearing. We disagree.

First, Worker's suggestion that satisfaction of the requirements set forth in Section 52-5-1(D)(1)-(4) results in the WCJ having no discretion as to whether to approve the settlement is belied by the very terms of those subsections. Section 52-5-12(D)(3) requires the WCJ to determine whether the "agreement is fair, equitable and

13

provides substantial justice to the worker and employer[,]" and that determination involves the exercise of discretion. Furthermore, there is also nothing in the clear language of Section 52-5-12(D) suggesting that a lump-sum settlement agreement may be enforced if there is either a hearing or the requirements of Subsections (1) through (4) are satisfied.

**CONCLUSION**

For the foregoing reasons, we reverse the WCJ's order enforcing the Agreement and denying Employer/Insurer's motion to set aside the Agreement.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**